(No. 6286.   June 27, 1936.)

ALLIIS–CHALMERS MANUFACTURING COMPANY, a Corporation, Respondent, v. EDWIN R. HARRIS and DOROTHY HARRIS, Husband and Wife, and RANSOME E. HARRIS, Appellants.

[59 Pac. (2d) 345.]

C. E. Crowley & Newel S. Crowley, for Appellants.

Merrill & Merrill, for Respondent.

HOLDEN, J.—On and for a number of years prior to April 25, 1930, appellant, Edwin R. Harris, hereinafter called the "purchaser", was engaged in farming approximately 320 acres of dry farm land near Ririe, Idaho. On that date, he entered into a contract with the Advance-Rumely Thresher Company, Inc., to purchase a tractor and equipment for use on his farm and, to evidence the purchase price thereof, made, executed and delivered to said company two promissory notes, one in the sum of $648, due and payable on or before September 15, 1930, and the other in the sum of $647, due and payable on or before September 15, 1931. April 26, 1930, to secure the payment of said notes, the purchaser made, executed and delivered to said Advance-Rumely Thresher Company, Inc., a chattel mortgage covering said tractor and equipment. When delivered (shortly after the execution of the chattel mortgage), the tractor was equipped with 4½" spade cleats instead of 5½" spade cleats as specified in the contract. The 5½" spade cleats were later substituted for the 4½" cleats and a credit

given the purchaser for the difference, the 5½″ spade cleats being accepted and used by the purchaser. Upon delivery of the tractor, the purchaser started to plow an abandoned road, and, having some difficulty with the tractor, sent for an Advance-Rumely Thresher Company mechanic. Upon arriving at the farm of the purchaser, the mechanic serviced the tractor and demonstrated it to some extent. Very soon after that, May 3, 1930, some minor adjustments were made, and the tractor was again serviced, at which time the purchaser signed a service report reading as follows:

"A service mechanic of Advance-Rumely Thresher Company, Inc., has this day finished experting my Advance-Rumely tractor No. W–2830 at my request, and has remedied and removed all cause of complaint I have against said machine, and I hereby acknowledge receipt of copy of this report.

"(Signed) EDWIN HARRIS Customer."

June 7, 1930, the tractor was repaired and again serviced, at which time the purchaser signed another service report in the same form as that above quoted.

October 27, 1930, purchaser paid $100 on the first note, given for the sum of $648. Later, December 15, 1930, purchaser wrote the following letter to Mr. Perkins, branch manager of Advance-Rumely Thresher Company, Inc.:

"Ririe, Idaho
"Dec. 15–1930

"Dear Mr. Perkins

"I am today sending you a few dollars $65.00 it isn't very much but its the best I can do at present.

"However after the first of the year I have hopes of getting a little help from my Banker. However if you are in our Co. I should be very glad to have you go with me to my Banker. Mr. Clark at Rigby. I think we may be able to work things out a little better.

"Hoping to receive a favorable reply I am

"(Signed)   EDWIN HARRIS."

February 26, 1931, the purchaser paid an additional sum of $100 on the first note and then he and his wife, as additional security for the payment of the balance ($1,295)

then due upon the said notes, executed and delivered to the Advance-Rumely Thresher Company, Inc., a real estate mortgage upon certain lands located in Bonneville County, theretofore conveyed to the purchaser subject to a first mortgage given December 2, 1916, to the Oregon Mortgage Company, for the sum of $1,600, which first mortgage the Oregon Mortgage Company had, on October 19, 1925, assigned to the San Francisco Theological Seminary, to which the purchaser (Edwin R. Harris) continued to make payments, the amounts thereof being indorsed on the note.

About two months after having given the real estate mortgage, to wit, April 21, 1931, the purchaser signed a Satisfaction Certificate reading as follows:

"Dated at Ririe, Idaho 4/21/1931.

"Received of ADVANCE–RUMELY THRESHER COMPANY, INC., a corporation of LaPorte, Indiana, Extension on my past due paper to September 1, 1931 in consideration of which I hereby acknowledge full satisfaction and settlement of all demands of any nature whatsoever against ADVANCE–RUMELY THRESHER COMPANY, INC., or growing out of the purchase and sale or relating to certain machinery heretofore purchased from Advance-Rumely Thresher Co. Inc. viz: One 20–30 Oil Pull tractor & ex. rims and expressly waive all counter claims, set-offs, and defenses against the collection of any note or notes given therefor or indebtedness relating thereto and any renewal or renewals thereof, and I hereby acknowledge to owe ADVANCE-RUMELY THRESHER COMPANY, INC., aforesaid for the purchase price of the said machinery the sum of $1030.00 & accrued interest which sum I promise to pay.

"Witness: FRED B. SMITH
            IRA MOORE.
                    "(Signed)    EDWIN R. HARRIS."

October 2, 1931, for and in consideration of the sum of $50, the San Francisco Theological Seminary assigned said first mortgage (given December 2, 1916, to the Oregon Mortgage Company and assigned by that company to the Theological Seminary) to Ransome E. Harris, father of the purchaser. Thereafter, July 11, 1932, a Memorandum of

Settlement and Extension Agreement was entered into between the purchaser and his father whereby it was agreed there was due appellant Ransome E. Harris from appellants Edwin R. Harris and Dorothy Harris, his wife, on said first mortgage, the sum of $1,200, that being the total of the various sums which the purchaser had theretofore paid on said first mortgage, and whereby it was also agreed that payment of said first mortgage and note secured thereby be extended to July 11, 1935.

August 22, 1932, the Advance-Rumely Thresher Company, Inc., endorsed, transferred and delivered said Harris notes, and executed, acknowledged and delivered written assignments of said Harris chattel and real estate mortgages to respondent. Shortly thereafter respondent offered to pay appellant Ransome E. Harris the said sum of $50, together with accrued interest, which offer the said appellant refused. Respondent then commenced this suit to foreclose said Harris chattel and real estate mortgages. The complaint in foreclosure is in the usual form. Appellants Edwin R. Harris and wife answered, pleading a rescission of the contract of purchase and breach of warranty, and demanding a restoration of the money paid on the tractor. Appellant Ransome E. Harris answered and filed a cross-complaint for the foreclosure of said first real estate mortgage, assigned to him by the San Francisco Theological Seminary, as aforesaid. Upon the trial of the main controversy, and cross-suit, the District Court entered a decree foreclosing said Harris chattel and real estate mortgages, from which a joint appeal was prosecuted to this court by defendants Edwin R. Harris and wife, and defendant and cross-complainant Ransome E. Harris.

Twelve errors are assigned, which, taken and considered together, present the following questions: 1. Was respondent the owner of said Harris notes, chattel and real estate mortgages, and the real party in interest in the prosecution of this suit for the foreclosure of said mortgages, within the meaning of sec. 5–301, I. C. A.? 2. Was respondent engaged in the business of collecting accounts, bills, claims or other indebtedness within the meaning and in violation of

chapter 11, title 53, I. C. A.? 3. Were the payments to the said Theological Seminary by appellant Edwin R. Harris made with his own funds, and did such payments reduce and extinguish the first mortgage debt *pro tanto?* 4. Did the court err in finding that, prior to the°commencement of this suit, respondent tendered appellant Ransome E. Harris the sum of $50 (balance due on the mortgage assigned to him, as aforesaid), together with accrued interest? 5. Did the court err in finding that appellant Edwin R. Harris waived his right to rescind his order contract with the Advance-Rumely Thresher Company for the purchase of the tractor and equipment?

The first two questions will be discussed and considered together. Appellants earnestly contend that respondent was not the owner of the Harris notes, and chattel and real estate mortgages, and, therefore, that it is not the real party in interest. That contention is based upon a letter written December 1, 1931, by F. A. Perkins, branch manager of respondent, to appellant Edwin R. Harris, in which it is stated, among other things, that respondent "bought the Advance-Rumely Branch House Organization," but that it "did not buy the Advance-Rumely notes," and also upon the testimony of the branch manager that he did not know what arrangements respondent and the Advance-Rumely Thresher Company made before the Harris notes were transferred, and that he did not know whether the respondent did or did not own the Harris notes and mortgages. The testimony of the branch manager on the question of the ownership of the notes and mortgages in question might not be sufficient, standing alone, to establish ownership in respondent. However, the notes in each instance were endorsed as follows:

"PAY TO ALLIS–CHALMERS MANUFACTURING COMPANY OR ORDER. ADVANCE–RUMELY THRESHER COMPANY, Inc."

The assignment of the chattel mortgage, among other things, recites:

"FOR VALUE RECEIVED, ADVANCE–RUMELY THRESHER COMPANY, Inc., a Corporation, doth hereby

grant, bargain, sell, assign and set over without a warranty, or recourse upon it, unto Allis-Chalmers Manufacturing Company, Milwaukee, Wisconsin, a certain Chattel Mortgage, executed by Edwin R. Harris on April 26th 1930, to ADVANCE–RUMELY THRESHER COMPANY, Inc., together with the notes thereby secured, . . . .

"TO HAVE AND TO HOLD the said Notes and Mortgage, and the debt thereby secured, and all the interest conveyed by the said Chattel Mortgage in and to the property therein described to said assignee its executors, administrators and assigns forever."

And the assignment of the real estate mortgage, among other things, recites:

"FOR VALUE RECEIVED, ADVANCE–RUMELY THRESHER COMPANY, Inc., a Corporation, doth hereby grant, bargain, sell, assign and set over without a warranty, or recourse upon it, unto Allis-Chalmers Manufacturing Company, Milwaukee, Wisconsin a certain Real Estate Mortgage, executed by Edwin R. Harris and Dorothy Harris on February 26th, 1931, to ADVANCE–RUMELY THRESHER COMPANY, Inc., together with the notes thereby secured, . . . .

"TO HAVE AND TO HOLD the said Notes and Mortgage, and the debt thereby secured, and all the interest conveyed by the said Real Estate Mortgage in and to the property therein described to said assignee its executors, administrators and assigns forever."

It must be remembered that the above-mentioned Perkins letter was written more than eight months before the Advance-Rumely Thresher Company transferred the Harris notes, and assigned the Harris chattel and real estate mortgages, to respondent, and that respondent does not claim that it was the owner of that paper at the time the Perkins letter was written. And, bearing in mind that appellants do not attack the validity of the endorsement of the notes or assignments of the mortgages (evidently because respondent does not claim to be an innocent purchaser of the paper before maturity, said transfer having been made long after the maturity of the notes and mortgages), and, there-

fore, giving such endorsement and assignments effect according to their terms and tenor, title to those instruments was effectually transferred from the Advance-Rumely Thresher Company to respondent. Furthermore, it will be observed from an examination of said endorsement and said assignments that they are absolute and unconditional, and that they were not made for the purpose of collection. If the record showed that respondent was engaged in operating a collection business at the time said endorsement and assignments were executed and delivered, and that respondent had not complied with chapter 11, title 53, I. C. A., and that said Harris notes and chattel and real estate mortgages had been endorsed and assigned to respondent for collection only, then the case of *Goranson v. Brady-McGowan Co.*, 48 Ida. 261, 281 Pac. 370, relied upon by appellants, might be in point. The only testimony in the record giving any support to the contention of appellants that respondent was engaged in the collection business, is the testimony of branch manager Perkins, who testified, among other things, as hereinbefore pointed out, that he did not know what arrangements respondent and the Advance-Rumely Thresher Company made before the Harris notes were transferred, and that he did not know whether respondent owned said Harris notes and mortgages or not. That testimony is not sufficient to bring the case at bar within the rule anounced by this court in *Goranson v. Brady-McGowan Co., supra.* We, therefore, conclude that respondent was not engaged in the collection business and that the evidence is sufficient to support the finding of the trial court that respondent was the owner of the said Harris notes and mortgages.

■ Were the payments to the said Theological Seminary by appellant Edwin R. Harris made with his own funds, and did such payments reduce and extinguish the first mortgage debt *pro tanto?* The evidence on that question is voluminous. It would serve no useful purpose to review it at length. In brief, appellant Edwin R. Harris testified: That the transmission of every other item (remittance) to the Theological Seminary (except the check of appellant Ransome E. Harris for an assignment of the mortgage he sought to foreclose) was by his own check, drawn on his own bank

account.  His father, appellant Ransome E. Harris, in substance, testified that whenever his son came to him for a little help, he gave it to him; that that was his practice; that when he had the money and his son came to him to borrow a little, he gave it to him; that that was his general course of practice; that that was the way the item of $1,200 (remitted from time to time to the Theological Seminary by his son, Edwin R. Harris) was built up; that his son would need money and come to him and that he would loan it to him; that his son was owing him for the purchase of a farm; that he would sometimes bring him money; that he told his son he didn't need it; that he told his son that if he needed the money worse than he did, to go ahead and use it and that he could get along and to never mind him; that it was that money that his son sent in to the Theological Seminary.  That testimony, and testimony of similar import, leave no doubt but that the payments made by appellant Edwin R. Harris to the Theological Seminary were made with his own funds for the purpose of extinguishing the debt *pro tanto,* secured by the mortgage given to the Oregon Mortgage Company, and by it assigned to the Seminary, and by the Seminary assigned to his father.

■■   Next, did the court err in finding that, prior to the commencement of this suit, respondent tendered to appellant Ransome E. Harris, the sum of $50 (balance due on the mortgage assigned to him by the Theological Seminary), together with accrued interest?  On the question of tender, Ransome E. Harris testified that branch manager Perkins and a Mr. Smith called on him at his farm; that they told him they understood he had an assignment of a mortgage; that they had come out to see if they could make a settlement with him on it; that they said they would give him fifty dollars that he had paid out, with interest, and all other expenses he had been to; that he "told them that there was nothing doing, I says, I have got twelve hundred dollars in that mortgage now, and there is nothing doing"; that he said, "There's no use of you talking to me, because I won't consider it, at all."

It is contended by appellants that the offer so made to appellant Ransome E. Harris was not a good tender be-

cause it is argued that "sections 16–1501 and 16–1502, I. C. A., prescribe the method of making a tender, and provide that debtor may demand a receipt, as a valid part of a tender." Those sections read as follows:

"16–1501. Written offer equivalent to tender.—An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument or property."

"16–1502. Debtor may demand receipt.—Whoever pays money, or delivers an instrument or property, is entitled to a receipt therefor from the person to whom the payment or delivery is made, and may demand a proper signature to such receipt as a condition of the payment or delivery."

It will be noted that section 16–1501, *supra*, covers written tenders and, therefore, has no application. It will also be observed that section 16–1502, *supra*, provides that a *debtor* may demand a receipt upon the payment of money, and it has no application because appellant Ransome E. Harris was a *creditor*, and not a *debtor*. It is, apparently, further contended that respondent demanded an assignment, and not a release, and, therefore, that the offer to pay the sum of $50, with interest, and all other expenses, did not constitute a legal tender. Assuming, but not conceding, that respondent demanded an assignment, and not a release, it does not appear that an objection was made to the offer for that, or any other, reason. Section 28–112, I. C. A., provides:

"Objection to offer of performance.—All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor if not then stated."

See also *Harding v. Home Investment etc. Co.*, 49 Ida. 64, 73, 286 Pac. 920, 297 Pac. 1101.

No objection having been made either to the mode, form or substance of the offer, the offer, under the circumstances, constituted a legal tender.

Finally, did the court err in finding that appellant Edwin R. Harris waived his right to rescind his order contract with the Advance-Rumely Thresher Company to purchase the tractor and equipment? By the terms of the order contract, the tractor was sold upon the following warranty: "When properly adjusted and competently operated according to seller's instructions on land or grain in suitable condition it will be capable of doing as good or better work than any other machine of the same kind, size and rated capacity working under like conditions on the same job." And, touching the right of the purchaser to rescind the order contract, in the event the machine proved to be defective, it is provided:

"Purchaser agrees to give each machine a fair trial in the manner aforesaid as soon as possible after delivery, and within five days after its first use, which, it is agreed, is a reasonable time for purchaser to inspect and test same, for latent, patent or other defects and if he shall claim it fails to fulfill said warranty he shall give seller written notice by registered letter addressed to Laporte, Indiana, and also at seller's branch place of business through which said machine was sold, mailed within four days from the date during said trial period when such defect or failure first appears, specifying the machine and in what particular it fails to fulfill the warranty, and allow a reasonable time for seller to send a competent man to examine it and put it in order to comply with this contract, purchaser agreeing to render friendly assistance without compensation for labor or material furnished; or allow seller, at its option, to substitute a machine or part which when tested under like terms and conditions as to notice and otherwise shall comply, and upon failure so to do the purchaser shall immediately discontinue the use of said machine, or substituted machine, shall place the same, in as good condition as when received, at the disposal of seller at the place where he received it, free of charge, give seller immediate written notice thereof, and this sale and purchase of such defective machine or part shall be considered rescinded."

It will be noted that the pertinent requirements of the order contract touching the matter of the right of rescission

are: 1. That the purchaser will give the tractor a fair trial in the manner provided by the contract. 2. That five days is a reasonable time within which to test and inspect the machine. 3. That if the purchaser shall claim that the machine fails to fulfill said warranty, he shall give the seller written notice by registered letter addressed to Laporte, Indiana, and also at seller's branch place of business through which the machine was sold, mailed within the trial period, four days after any defect or failure of warranty first appears, specifying in what particular the machine fails to fulfill the warranty. 4. That the purchaser will allow the seller a reasonable time within which to send a competent man to examine the machine and put it in order to comply with the contract, or allow the seller, at its option, to substitute a machine. 5. That upon failure so to do, the purchaser shall immediately discontinue the use of the machine, place it in as good condition as when received, at the disposal of the seller, where the purchaser received the machine, free of charge, and give the seller immediate written notice thereof.

While there is evidence in the record that the purchaser was dissatisfied with the machine from the time he first used it, and that he had trouble with the machine from time to time, the record discloses that, at different times, the Advance-Rumely Thresher Company sent mechanics to service the machine and that each time the machine was serviced, the purchaser signed a service report stating that all cause of complaint against the machine had been removed, and it appears that after the machine had been used during the spring, summer, and fall, to wit, December 15, 1930, the purchaser wrote a letter to the seller remitting the sum of $65 for application on the purchase price, stating that the amount wasn't very much but that it was the best he could do "at present," but that after the first of the year he hoped to get some help from his banker, indicating that he would like to have made a larger payment on the purchase price of the machine if it had been possible, but giving no hint of any defects in the machine, serious or otherwise. About four months later, to wit, April 21, 1931, the pur-

chaser signed a Satisfaction Certificate acknowledging full satisfaction and settlement of all demands of any nature against the Thresher Company, or growing out of the purchase and sale of, or relating to, the tractor, and further acknowledging that he owed the Thresher Company on the purchase price of the tractor a balance of $1,030, and accrued interest, and promising to pay that balance. Furthermore, that Satisfaction Certificate was executed by the purchaser after he had used the machine for a year, and by its terms the purchaser expressly waived all defenses against the collection of the purchase price notes. In addition to waiving all defenses, the purchaser, by the execution of that instrument, clearly indicated that he was satisfied with the tractor. It further appears the purchaser continued to use the machine for a period of about two years after he claims he first discovered that it was defective, a period much longer than necessary to test the tractor, plowing and harrowing at least 160 acres in 1930, and, in the following year, again plowing and harrowing an additional 160 acres. The record further shows that the purchaser failed to give the Advance-Rumely Thresher Company written notice of any claimed defects in the tractor, either at Laporte, Indiana, or at the branch place of business through which the tractor was sold, and the record also shows that the purchaser dismantled the tractor, some of the parts being in one county and some in another, and that he failed to return or deliver the tractor to the seller at the place where he received it. The conduct of the purchaser, above outlined, considered in connection with all the facts and circumstances shown by the record, constitute a waiver by the purchaser of his right, under the contract, to rescind.

The general rule in respect to rescission is stated in Black on Rescission and Cancellation (second edition), section 599, as follows:

"If the purchaser of a tool, implement, machine, apparatus, or any other article intended to serve a useful purpose, discovers that he has been deceived or defrauded, or that the article is defective or unsuited to its purpose, but nevertheless continues to use it, not for the purpose of test-

ing it or trying to make it available (or to an extent substantially greater than is necessary for testing or adjusting), but for the purpose of deriving a benefit or advantage from its use, he will be held to have waived his right to rescind the purchase, and cannot thereafter return the article and claim a restoration of the money paid for it.''

See also *Troendly v. J. I. Case Co.*, 50 Ida. 506, 513, 297 Pac. 1103; *Mulhall v. Lucas*, 37 Ida. 558, 217 Pac. 266; *Advance-Rumely Thresher Co. v. Stohl*, 75 Utah, 124, 283 Pac. 731, 737; *Massey-Harris Harvester Co. v. Burnett*, 126 Kan. 453, 268 Pac. 740; *Advance-Rumely Thresher Co. v. Terpening et al.*, 58 Mont. 507, 193 Pac. 752.

Judgment affirmed. Costs awarded to respondent.

Givens, C. J., and Budge, Morgan and Ailshie, JJ., concur.