[No. 36344.    Department Two.    August 8, 1963.]

GORDON T. TYREE et al., Appellants, v. ROY L. STONE et al., Respondents, F. G. CAMPBELL et al., Defendants.*

*Wayne Gladstone*, for appellants.

*Clausen & Gemmill*, by *Paul A. Clausen*, for respondents.

*Reported in 384 P. (2d) 626.

WEAVER, J.—This is an action (a) for rescission of a conditional sales contract and a return of all sums paid thereunder; or in the alternative (b) for damages for breach of contract.

The alleged damages spring from the fact that plaintiffs were unable to qualify as purchasers under the Atomic Energy Community Act of 1955 (42 U.S.C. § 2301 *et seq.*), because of defendants' claimed failure to fulfill their contractual obligation.

The trial court held that the uncontroverted facts did not support plaintiffs' alleged right to rescind the contract, and that their claim for damages was barred by the 6-year statute of limitations.

Plaintiffs appeal from a judgment dismissing their action with prejudice, entered after the court had granted defendants' motion for summary judgment.

In 1949, defendant Stone[1] held a lease from the federal government on certain land in Richland, Washington, on which was located a food market adjacent to a bakery building. He had constructed the bakery building as an addition to the market, gave title to the government, and leased the land and bakery from the government. The lease provided that the bakery premises could not be assigned or transferred without "the express prior and written approval" of the government. Stone owned the inventory and equipment in the bakery.

February 14, 1950, Stone secured permission from the government to sublease the bakery to plaintiffs, the sublease to be subordinate to Stone's lease.

March 7, 1950, the defendant Stone sold the bakery to plaintiffs on conditional sales contract. The sale included:

"(a) All of the fixtures and equipment . . .
"(b) All merchandise and supplies on hand . . .
"(c) The right to occupy Garmo's [Stone's] Bakery Building and to enjoy all the rights and privileges of the Vendors in the use and occupancy of the same under the provision of said Supplemental Agreement No. II dated

---

[1]For brevity, we refer to Roy L. Stone as the sole defendant, although his wife, Roydon L. Stone and his wife, and H. E. Garmo and wife are parties defendant.

February 1, 1948, and the letter of the General Electric Company [agent of the government] dated February 14, 1950, hereinabove referred to. *The Vendors will, to the extent that they are permitted to do so,* assign to the Purchasers all of their rights under [the lease agreements between Stone and the government]." (Italics ours.)

Plaintiffs' rights must arise from this contract.

August 16, 1950, Stone sold the food market adjacent to the bakery to K. T. Campbell.[2] With the consent of the government, and as part of the transaction, he assigned to Campbell the lease agreements between him and the government covering the market and bakery. Campbell guaranteed plaintiffs' performance of their conditional sales contract by which they purchased the bakery from Stone.

February 1, 1953, Stone's lease (assigned to Campbell in 1950) expired although the government was committed to renew it " . . . under terms and conditions to be mutually agreed upon at that time . . . "

May 1, 1953, the government[3] executed a new lease[4] (designated "Supplemental Agreement No. VII" effective February 1, 1953) to Campbell for the premises involved. Although plaintiffs participated in the negotiations for the new lease, they were not parties to it. The lease provided in part:

" . . . all rights of the parties which have accrued or matured under the provisions of the basic agreement, prior to the effective date hereof, shall in nowise be impaired, limited, enlarged, or affected by reason of the provisions of this Supplemental Agreement . . . "

Defendant Stone, of course, was *not* a party to the new lease. Although not pleased with the arrangement, plaintiffs accepted a sublease from Campbells.

---

[2]For brevity, we refer only to K. T. Campbell. F. G. Campbell and R. W. Carriger were also involved in the purchase. Defendant Stone made all three of them third party defendants to this action. Their rights and liabilities, if any, however, are not involved in this appeal.

[3]By its agents, Atomic Energy Commission, General Electric Company and Hanford Atomic Products Operation.

[4]Basic lease, May 24, 1944; assigned by E. I. du Pont de Nemours and Co. to General Electric Company, August 31, 1946.

From 1951 to 1955, plaintiffs, with the assistance of Campbell, sought without success to secure a direct lease of the bakery from the government to them.

August 4, 1955, Congress passed the Atomic Energy Community Act of 1955, 42 U.S.C. § 2301 *et seq.* It provided for the sale of government owned properties in communities such as Richland, and for a system of priority purchase. 42 U.S.C. § 2332.

It would unduly lengthen this opinion to set forth the further negotiations among plaintiffs, Campbell, and the government, to secure a lease of the bakery from the government to plaintiffs. It is sufficient to note that one of the tentative conditions was a release by defendant Stone of Campbell's guaranty of plaintiffs' performance of the conditional sales contract of March 7, 1950.

When defendant Stone's release of Campbell was presented to him, Campbell informed plaintiffs that he was adhering to his decision to apply to the government to purchase both the market and the bakery.

Plaintiffs' application for priority to purchase the bakery was denied; the denial was affirmed by the Advisory Board of Priority Appeals, United States Atomic Energy Commission. In June of 1959, the United States District Court denied redress to plaintiffs.

July 18, 1959, the bakery was seriously damaged by fire.

January 29, 1960, plaintiffs filed this action against defendant Stone to rescind the conditional sales contract dated March 7, 1950, or in the alternative for damages for breach of contract.

The trial court's decision that plaintiffs had waived their right to rescind the conditional sales contract of March 7, 1950 does not merit extended discussion.

■ A purchaser's waiver of the right to rescind a contract must be voluntary and intentional; delay in claiming it must not be induced by the vendor. *Lester v. Percy*, 58 Wn. (2d) 501, 503, 364 P. (2d) 423 (1961). The remedy must be pursued promptly and unconditionally. *Sloane v. State*, 161 Wash. 414, 297 Pac. 194 (1931); *Dickinson Fire*

*& Pressed Brick Co. v. F. T. Crowe & Co.*, 63 Wash. 550, 115 Pac. 1087 (1911).

In *Wickre v. Allen*, 58 Wn. (2d) 770, 776, 364 P. (2d) 911 (1961), the court said:

"Whether it be claimed that plaintiff's actions constitute an affirmance or ratification of the contract, waiver of known fraud, or waiver of the right to rescind, it appears that the touchstone of the problem is the *intent* of the actor. *Algee v. Hillman Inv. Co.*, 12 Wn. (2d) 672, 123 P. (2d) 332 (1942). As we said in *Vinneau v. Goede*, 50 Wn. (2d) 39, 41, 309 P. (2d) 376 (1957):

" ' . . . In any event, waiver is a matter of intent . . .'

"In determining intent, the nature of the subject matter of the contract should be considered. . . ."

From the inception of the March 7, 1950 contract, plaintiffs were aware that defendant Stone's ability to assign the bakery lease to them was specifically curbed by the necessity of "the express prior and written approval" of the government; and that defendant Stone covenanted to assign the bakery lease only "to the extent that [he is] permitted to do so."

For almost 10 years, plaintiffs treated the agreement as an existing contract. They exerted great effort to secure a prime lease from the government direct to them as purchasers of the bakery. We find nothing in the record to indicate that plaintiffs elected to rescind the contract promptly upon learning of Stone's inability to assign the bakery lease to them; or that they considered themselves involuntary bailees of the bakery. In fact, the entire record is to the contrary.

The record supports the trial court's conclusion that plaintiffs intended to and did waive their right (if any) to rescind the contract of March 7, 1950.

The asserted contractual duty to assign the lease to plaintiffs must necessarily be based on the following language:

" . . . The Vendors will, to the extent that they are permitted to do so, assign to the Purchasers all of their rights under said Supplemental Agreement No. II dated February 1, 1948, and said letter of February 14, 1950, from the General Electric Company above referred to."

██  The essence of this provision is a promise by Stone to assign his rights under the contract with the government, if permitted to do so by the government. This is an aleatory promise,[5] since it is conditioned on the fortuitous act of a third party.

By its terms, Supplemental Agreement II was to expire on February 1, 1953. The letter from General Electric stated they were "agreeable" to extending the lease for an additional 7-year period "under terms and conditions to be mutually agreed upon at that time [February 1, 1953]." The letter also stated that they were agreeable to a 10-year sublease on the bakery under certain enumerated terms and conditions, one being that:

"Any sublease agreement shall be subordinate to your lease with us."

Plaintiffs had full knowledge of the agreement and letter. There was no guarantee made by Stone that he would renew the agreement in 1953. By its own terms, the promise would expire when Stone no longer had any rights under the agreement.

██  On February 1, 1953, Supplemental Agreement II expired and was not renewed by Stone. Another supplemental agreement was entered into with Campbell. There no longer were any "rights under said Supplemental Agreement II"; the duration of the promise had come to an end.

Any right of action for the breach of this promise would necessarily have to accrue on or before that date. Since the present action was not commenced until more than 6 years after the date of the expiration of the agreement, the statute

---

[5]". . . An aleatory promise is one the performance of which is by its own terms subject to the happening of an uncertain and fortuitous event or upon some fact the existence or past occurrence of which is also uncertain and undetermined. . . ." 3A Corbin on Contracts § 728.

See also 6 Williston on Contracts (3d ed.) § 888; and Restatement, Contracts § 291.

It should be noted that at the time plaintiffs and Stone entered into their contract, the consent of the government was not only uncertain but also improbable.

of limitations has run on any such cause of action. (RCW 4.16.040).

The judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY, and HUNTER, JJ., concur.

---

September 18, 1963. Petition for rehearing denied.