485 P.2d 957

Andrew J. BLINZLER and Mary E. Blinzler, husband and wife, Plaintiffs-Respondents, Cross-Appellants,

v.

James R. ANDREWS, Milton D. Andrews and Janice Andrews, husband and wife, Defendants-Appellants, Cross-Respondents.

No. 10591.

Supreme Court of Idaho.

April 23, 1971.

Rehearing Denied June 21, 1971.

Scott W. Reed, Coeur d'Alene, for appellant and cross-respondent James R. Andrews.

Peter B. Wilson, of Wilson & Walter, Bonners Ferry, for appellants and cross-respondents Milton D. Andrews and Janice Andrews.

Stephen Bistline, Sandpoint, for respondents and cross-appellants.

SPEAR, Justice.

This appeal concerns two land sale contracts, both of which are quite similar in content, concerning two farms located near each other in Boundary County. The Blinzlers (plaintiffs-respondents) negotiated for the simultaneous purchase of both farms from two brothers, James R. Andrews and Milton D. Andrews, and wife (defendants-appellants). Both contracts were signed by the Blinzlers November 25, 1959, and signed by the Andrews December 7, 1959.

The James R. Andrews contract provided for a purchase price on the farm of $52,500.00, with $9,000 down and $3,500 due December 1, 1960 and each December 1 thereafter until the principal was paid. The Milton D. Andrews contract stated a price of $40,000 with $7,000 down and $2,750 due December 1, 1960 and each succeeding December 1. Each contract provided for 5% interest on the deferred payments with the accumulated interest deducted from the annual payment and the balance applied to the principal. In both contracts, the relevant obligations of the Blinzlers were: to pay all taxes and assessments, to insure the annual crop, and to pay all the Andrews' reasonable attorney fees for any suit arising out of the agreements. The James R. Andrews contract also provided that the Blinzlers were to insure the buildings on the farm.

Both contracts provided that the Andrews would obtain for the benefit of the Blinzlers an easement between the two farms and that the Andrews would provide within a reasonable time a title insurance policy to the extent of the purchase price showing marketable title in the Andrews.

As relevant to the case, both contracts also contained these general provisions: the First National Bank of Bonners Ferry, Idaho was appointed escrow holder of the contracts, warranty deeds, and title insurance policies. The performance by the Blinzlers of all the terms of the contract was a condition precedent to the performance of the agreements by the Andrews. In the event of breach of any of the terms of the contracts, on 60 days notice, the Andrews were entitled to immediate possession, the Blinzlers forfeited all rights under the contract, and the Andrews were entitled to retain all moneys paid by the Blinzlers toward the purchase of the farms as rent and liquidated damages for the use and occupancy of the premises. Both contracts stated that time was of the essence.

The James R. Andrews contract provided that he was to have been afforded a reasonable time to probate his wife's estate and perfect title to the farm. The Milton D. Andrews contract provided that if the title search revealed an error in the legal description, the error not being material to the contract, the legal description should be corrected to eliminate such error.

The Blinzlers took possession of the two farms and made the payments due December 1, 1960 and 1961. When the 1962 payments were delivered to the escrow agent, the Blinzlers directed that the escrow agent should not transfer the money to the Andrews until the title insurance policies were delivered in "accordance with the terms of the contract." The escrow agent notified the Andrews of the Blinzlers' instruction to withhold the 1962 installments

and, after protest made by Milton Andrews, released the payments with notice to the Blinzlers.

The record is vague regarding what demands the Blinzlers made for title insurance. Mr. Blinzler testified that he was "pretty sure" that he had requested title insurance in 1960. He also testified that he did not recall having requested title insurance after February 1962. Except for one exhibit, there is no evidence that the Blinzlers requested title insurance after December 1962.

The record also reveals that respondent worked both farms during 1963 and in October 1963 requested modifications in both contracts. The requested modifications were presented as a plea for help due to a bad crop year. Both James and Milton Andrews assented to the modification which deferred the principal payment due December 1, 1963 with the Blinzlers paying only the interest.

Both title insurance policies were meanwhile being prepared. The Milton Andrews title policy was forwarded to the escrow agent on February 19, 1964 and a copy of the transmittal letter was sent to Andrew Blinzler. The title policy was issued on the James Andrews farm March 23, 1964.

When the December, 1963 payments came due, the Blinzlers had not been furnished with title insurance on either farm and the 1963 payment was not made to either James or Milton Andrews. On approximately December 28, 1963, James Andrews and Milton Andrews gave notice of default to the Blinzlers and of their intent to cancel the contract within 60 days and retain all sums paid by the Blinzlers pursuant to the forfeiture clause of the contract.

On or about February 17, 1964, the Blinzlers gave notice to the Andrews that the respective notices of default were breaches of the contract, since the Andrews had not performed their covenants in the contract by providing title insurance within a reasonable time, entitling them to rescission of the contract.

The district judge found that the delay of four years in obtaining title insurance was for more than a reasonable time and since there was no explanation for the delay, the Andrews had materially breached the contract and the Blinzlers were entitled to rescission. In computing the sum which the defendant James Andrews was to repay to the Blinzlers, the district judge allowed James Andrews credits for the reasonable rental value of the farm (approximately equal to the amount of the annual payment), rental for the buildings on the farm, damage done to the property, *and* amount of the contract price minus the fair market value in April 1964. The Blinzlers were allowed to recover the sum they had paid on the James Andrews farm minus the credit to James Andrews. In addition, the Blinzlers were allowed to recover the amount of taxes and insurance they had paid on the farm while they were in possession. James Andrews as a result was found to be indebted to Andrew Blinzler in the amount of $5,714.50.

The amount in which Milton Andrews was found indebted to the Blinzlers was derived similarly with additional credits due Milton Andrews for the value of crops in the ground when the Blinzlers went into possession. A credit was allowed the Blinzlers for improvements they made on the farm. Milton Andrews was found to owe Andrew Blinzler $1,637.23.

Although the Andrews allege numerous assignments of error, they can all be disposed of by considering these issues: (1) Whether the Blinzlers were entitled to rescission, and (2) Whether the Blinzlers waived their right to rescind.

■ The district court concluded that the Blinzlers were entiled to rescission on two grounds. The first is that the Blinzlers were entitled to rescission because the Andrews sent notices of forfeiture when they, the Andrews, were in default. Let us point out initially that these notices, one entitled "Notice of Forfeiture" and the other "Notice of Default," are actually

notices of default, describing the nature of the Blinzlers' default and giving them 60 days to cure. These notices were given according to the terms of the contract and did not *ipso facto* give the Blinzlers the right of rescission. If the Blinzlers were not in fact in default, and if they had a right to withhold the 1963 payment, then the notice of default was perhaps improper. The propriety of these notices then turns on the resolution of the second ground for rescission stated by the district court, that the title insurance was not provided within a reasonable time.

■ Rescission is an equitable remedy that totally abrogates the contract and seeks to restore the parties to their original positions. It is normally granted only in those circumstances in which one of the parties has committed a breach so material that it destroys or vitiates the entire purpose for entering into the contract. In re Estate of Johnson, 202 Kan. 684, 203 Kan. 262, 452 P.2d 286 (1969); Bollenback v. Continental Casualty Co., 243 Or. 498, 414 P.2d 802 (1966); Krause v. Mariotto, 66 Wash. 2d 919, 406 P.2d 16 (1965); Mohr v. Lear, 239 Or. 41, 395 P.2d 117 (1964); Huggins v. Green Top Dairy Farms, Inc., 75 Idaho 436, 273 P.2d 399 (1954). While title insurance was an important part of this transaction, it was however only one aspect of the exchange. The Blinzlers were given possession of the two farms and the right to till them. Further, the Andrews rendered, in good faith, other acts that were required of them such as procuring easements and probating the estate of James Andrews' wife.

■ While it might be validly decided that a lapse of four years before procuring title insurance is more than a reasonable time, such conclusion is not necessary in this case. Assuming that an unreasonable time had elapsed as of December 1, 1962, the Blinzlers could have had a right to rescind the contract. However, as a precondition, the party seeking rescission must act promptly, once the grounds for rescission arise, in stating his intent to rescind and

no longer treat the contract as in existence. Perry v. Woodall, 20 Utah 2d 399, 438 P.2d 813 (1968); Tyree v. Stone, 62 Wash.2d 694, 384 P.2d 626 (1963); Brunzell Construction Co. v. G. J. Weisbrod, Inc., 134 Cal.App.2d 278, 285 P.2d 989 (1955); Bayley v. Lewis, 39 Wash.2d 464, 236 P.2d 350 (1951); Farrington v. Granite State Fire Ins. Co., 120 Utah 109, 232 P.2d 754 (1951).

Rather than notifying the Andrews of any breach by not having delivered title insurance policies, the Blinzlers continued in possession of the properties throughout 1963 and farmed both. This action by the Blinzlers can be construed in no other manner than as being consistent with their concurring in the continuing validity of the contract. Furthermore, such action is wholly inadequate when considered in light of the requirement that they unequivocally declare their intent to rescind the contract. If one considers that the right to rescind did not mature until the December 1, 1963 payment was due, the result is no different. The Blinzlers refused to make this payment, but did not actually declare their intent to rescind until February 17, 1964, some two and one-half months later. On neither account was there prompt action on the Blinzlers' part.

■■ Where a party treats a contract as valid after facts appear which would establish the right to rescind and misleads the other party, the right to rescission is waived. Wetterow v. White, 71 Idaho 372, 232 P.2d 973 (1951); Allis-Chalmers Mfg. Co. v. Harris, 56 Idaho 769, 59 P.2d 345 (1936); Hoke v. Stevens-Norton, Inc., 60 Wash.2d 775, 375 P.2d 743 (1962); Curry v. Stewart, 189 Kan. 153, 368 P.2d 297 (1962); Farrington v. Granite State Fire Ins. Co., supra; Morse v. Kogle, 162 Kan. 558, 178 P.2d 275 (1947); Neet v. Holmes, 25 Cal.2d 447, 154 P.2d 854 (1944). This principle is more clearly established where the party retains dominion over the subject matter of the contract and accepts benefits therefrom. As mentioned above, the Blinzlers continued in possession and tillage of both farms, an act consistent with an

existing contract. Another act by the Blinzlers indicating that they considered the contract still good was their request to defer the principal portion of the 1963 payment, not because of any problem with the title insurance, but because they did not have funds to meet the payment. This request was granted by the Andrews. We believe the record amply establishes that at that time Blinzlers waived their right to rescind for not having received title insurance in a reasonable time.

We are also persuaded by the fact that both policies were being prepared for some time before the 1963 payment was due and were delivered to the escrow agent early in 1964, well before the complaint was filed. The Blinzlers do not allege any damage due to the delay in receiving title insurance and acknowledge in their brief that they at no time knew of any defect in either title.

■■ Both contracts which are the subject of this appeal provided for the forfeiture of all payments made by the Blinzlers in the event of their default. Generally, where a forfeiture provision in a contract would provide an unjust and unconscionable recovery, it will not be enforced and the recovery will be assessed according to the amount of actual damage. Williams v. Havens, 92 Idaho 439, 444 P.2d 132 (1968); Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020 (1954). On remand, the district court should determine whether the amounts received by James and Milton Andrews are necessary to compensate them for any loss they actually sustained. If not, the excess should be returned to the Blinzlers.

■■ One other point ought to be mentioned here, although the issue has been rendered moot by this decision. Rescission exists as an alternate remedy to damages for breach of contract. Williston, Contracts, Rev.Ed., Vol. 5, § 1455. Since these are alternative remedies, both cannot be granted for the same breach. In this case, the district judge granted rescission to the Blinzlers and contract price minus market value as of April, 1964 or benefit of the bargain as a set-off to the Andrews. Since this was a rescission case where the objective is to treat the contract as never having existed and to return the parties to the status quo before the contract was formed, it is improper to grant a measure of damages to any of the parties based on breach of the contract.

This case is reversed and remanded for further proceedings consonant herewith.

Costs to appellants.

McFADDEN and DONALDSON, JJ., concur.

SHEPARD, Justice (dissenting).

I dissent. The district court found that the Andrews had not performed covenants in the contract requiring title insurance to be provided within a reasonable time and that the Blinzlers were entitled to rescission. Thus, the only matter for decision here is the importance and materiality of the Andrews' breach of the covenant to furnish title insurance.

The contracts were signed by the parties in November and December, 1959. Some four years later the purchasers had still not received the title insurance policies and refused to make the annual payment which was then due. The purchasers had made down payments amounting to $16,000.00. Their annual payments were $6,250.00, together with interest at the rate of five per cent per annum on the deferred payments. Obviously, the purchasers had a very substantial financial interest and investment in the contract for the purchase of the real property. In my judgment, they were absolutely entitled to a guarantee, as would be provided by title insurance policies, that upon the payment of the large sums of money involved herein they would indeed obtain what they had paid for, i. e., a free and clear title to the real property.

To state, as does the majority opinion, that the purchasers had the duty of continuing to make the large financial yearly investment without any assurance of performance by the sellers, simply disregards

what any person of common sense would have done when faced with such a situation. The fact that the purchasers were given possession of the farms and the right to farm them, and that easements were procured by the sellers and that an estate was probated, simply has no bearing on the principal question. The failure to furnish the title insurance policies, in my judgment, was a material breach of one of the most significant covenants contained in the contract.

After making the $16,000.00 down payment, the purchasers in 1960, requested the title insurance. The annual payments of $6,250.00, together with the interest on the unpaid balance, were made in December, 1960 and December, 1961. In December, 1962, the purchasers delivered the annual payment to the escrow agent and directed that the agent should not transfer that money to the sellers until the title insurance policies were delivered. The purpose of the purchasers was defeated since the escrow agent nevertheless released the annual payment to the sellers. The following year the purchasers adopted another technique by refusing to make the December, 1963 annual payment until they had been furnished with the title insurance. Promptly thereafter, the sellers gave notice of default to the purchasers and of the sellers' intent to cancel the contract and retain all sums paid by the purchasers pursuant to the forfeiture clause of the contract.

In my judgment, the purchasers had acted more than reasonably in tolerating the continuing breach of the contract by the sellers' failure to furnish title insurance. It appears to me that they had attempted to obtain the performance of the sellers' duty to furnish title insurance and had failed. It is understandable that they had no desire to jeopardize their very substantial financial investment in the real property, and finally, as any reasonably minded person would, came to the conclusion that they had best stop such investment at some point in time until they received what they were entitled to under the contract, i. e., a guarantee that they would receive good title to the real property in return for their investment. Rather than receiving that guarantee, they received notice that the sellers intended to oust them from the property and retain all of the monies that the purchasers had previously paid. At that point, they gave notice of rescission and, in my judgment, were entitled so to do. The district court so held and the action of the district court should be affirmed.

McQUADE, C. J., concurs in the dissent.