697 P.2d 1261

**LITHOCRAFT, INC., an Idaho corporation, Plaintiff-Respondent,**

v.

**ROCKY MOUNTAIN MARKETING, INC., an Idaho corporation, Defendant-Appellant.**

No. 15235.

Court of Appeals of Idaho.

April 5, 1985.

Michael F. Donovan, Ketchum, for defendant-appellant.

John L. Gannon, Boise, for plaintiff-respondent.

Before BISTLINE,* Acting C.J., and McFADDEN ** and OLIVER,*** Acting JJ., Special Panel.

* Justice, Supreme Court, sitting by assignment.

** Justice, Retired, Supreme court, sitting by assignment.

*** District Judge, Retired (Sixth Judicial District), sitting by assignment.

248

OLIVER, Acting Judge.

In early 1982 Rocky Mountain Marketing, Inc., entered into a contract with Stan Hawes to purchase the right to use the trade name "Sun Valley Magazine," which Hawes owned and published. Among the considerations for acquiring the trade name was Rocky Mountain's written agreement to pay Hawes a share of the advertising revenue which Rocky Mountain would thereafter earn over a limited number of issues while publishing under that trade name. Rocky Mountain proceeded to use the name and publish *Sun Valley Magazine.*

In the agreement between Rocky Mountain and Hawes, Hawes represented that neither he nor the business which he had operated in publishing *Sun Valley Magazine* had any outstanding debts. The agreement also stated that in the event *a debt of Hawes or his business was asserted against Rocky Mountain,* Hawes would indemnify the corporation for any damages incurred.

Hawes, however, was not truthful. He did in fact owe Lithocraft, Inc. a substantial amount of money. In March 1983, Lithocraft and Hawes compromised the account with Hawes' assignment to Lithocraft of his right to receive advertising revenues due him from Rocky Mountain. Rocky Mountain refused to honor the assignment and paid neither Lithocraft nor Hawes any of the revenues due Hawes.

In April of 1983, Lithocraft sued Rocky Mountain for all unpaid revenues owing to Mr. Hawes. Rocky Mountain's answer denied the claim and affirmatively alleged the defense of fraud on the part of Hawes in misrepresenting that he had no debts. A pleading denoted as a "counter-claim" was also filed by Rocky Mountain against Lithocraft which made the same allegation of Hawes' fraud and requested the court to declare the Hawes-Rocky Mountain agreement void. Hawes was not by this pleading brought in as a party defendant. At oral argument Rocky Mountain characterized this defense and counterclaim as a claimed rescission of the Hawes-Rocky Mountain agreement.

Lithocraft moved for summary judgment. The trial court granted it on the basis that there were no genuine triable issues of fact, and Lithocraft was entitled to judgment as a matter of law. Rocky Mountain appeals.

We first note that Lithocraft is not suing Rocky Mountain for a debt which had been owed to it by Hawes, but rather brings suit as Hawes' assignee for the right to revenues due Hawes pursuant to the Rocky Mountain contract. Lithocraft's claim against Rocky Mountain is not based upon Lithocraft's being a successor to either Hawes or Hawes' business venture. All Lithocraft seeks is collection of the amount of revenue that Rocky Mountain owed Hawes which other than for the assignment it should have paid Hawes.

Rocky Mountain's argument is that Hawes' misrepresentation that he had no creditors induced their contract, for which reason the contract should be rescinded and, apparently, its obligations to Hawes thereby extinguished. The contention is based upon the principle that any assignee stands in the shoes of his assignor, and Lithocraft cannot collect if Rocky Mountain has a defense against paying Hawes.

■ We have reviewed the record, and agree that the case was proper for summary judgment disposition. The right of rescission, assuming that it is available under these circumstances, is an equitable remedy. It is well-established that he who seeks equity must first do equity; he who seeks equitable rescission must first tender or offer to tender that which he has received. The record here is devoid of any such tender (or offer to tender) by Rocky Mountain which would have restored to Hawes, or to his assignee, the ownership of the *Sun Valley Magazine* trade name. Quite the contrary, Rocky Mountain tells us that it declined to do so because it might not have been able to recover anything back from Hawes. It makes no contention that Lithocraft is in any way responsible for what Hawes might owe on any account-

ing on a rescission, nor does it contend that there is any legal theory upon which it could hold Lithocraft so accountable.

■ Moreover, a party entitled to rescind or seek rescission must act promptly on learning of the facts giving rise to that right. *Blinzler v. Andrews*, 94 Idaho 215, 218, 485 P.2d 957, 960 (1971), *appeal after remand*, 95 Idaho 769, 519 P.2d 438 (1974).

■ Here the evidence is uncontroverted that Lithocraft's president, Lew Campopiano, notified Rocky Mountain's president, Reidel, as early as July 28, 1982, that Hawes was indebted to Lithocraft. Not until almost one year later—July 19, 1983 and after the filing of the present action— did Rocky Mountain, attempt to seek a rescission of the contract. Rocky Mountain, to this date, continues to use the *Sun Valley Magazine* name and to collect the advertising revenues therefrom.

Judgment affirmed. Costs to respondent. No attorney's fees on appeal.

BISTLINE, Acting C.J., and McFADDEN, Acting J., concur.