834 P.2d 868

**Virginia McINTIRE, Plaintiff–Appellant,**

v.

**Milton D. ORR and Nellie Orr, husband and wife, Defendants–Respondents.**

No. 19513.

Supreme Court of Idaho,
Boise, March 1992 Term.

June 29, 1992.
Rehearing Denied Aug. 21, 1992.

Ware, O'Connell & Creason, Lewiston, for plaintiff-appellant. Christopher J. Moore, argued.

Chenoweth, Nicholas, Law Offices, Orofino, for defendants-respondents. Roger L. Williams, argued.

BAKES, Chief Justice.

This controversy arose from the rescission of a contract for the sale of a motel. Defendants Orrs, the purchasers, were awarded a judgment and plaintiff seller appealed.

This appeal was originally assigned to the Court of Appeals, which dismissed it for being untimely filed. A petition for review was granted by the Supreme Court, and the matter was rebriefed and reargued. We now vacate the Court of Appeals opinion dismissing plaintiff's appeal. We also affirm in part and reverse in part the decision of the trial court.

## I

■ Regarding the timeliness of the appeal, on January 17, 1990, a judgment was entered against plaintiff Virginia McIntire (McIntire) in favor of defendants, Milton and Nellie Orr (Orr). On January 29, 1990, within fourteen days of entry of the judgment, McIntire served a copy of a motion to alter or amend the judgment on the defendants' attorney, pursuant to I.R.C.P. 59(e). The Certificate of Service on the motion read:

### CERTIFICATE OF MAILING

I hereby certify that on this 29th day of January, 1990, I served a copy of the foregoing MOTION TO ALTER OR AMEND JUDGMENT, by depositing same in the United States mail, postage prepaid, in an envelope, addressed to the following:

Roger L. Williams
Attorney at Law
P.O. Box 1168
Kamiah, Idaho 83536

The Honorable Eli B. Ponack
Nez Perce County Courthouse
Lewiston, Idaho 83501
/s/ William H. Bell

The motion was not filed with the district court until February 5, 1990, more than fourteen days after entry of the judgment. Although the trial court noted that the motion was not filed within fourteen days of the January 17, 1990, judgment, it denied the motion for a different reason on May 22, 1990.

On July 2, 1990, McIntire filed a notice of appeal from the judgment entered on January 17, 1990. The case was assigned to the Court of Appeals which dismissed the appeal under Idaho Appellate Rule 21 because it was filed more than 42 days after the entry of the judgment. The Court of Appeals determined that McIntire's Rule 59(e) motion to alter or amend judgment did not terminate the running of the 42–day period because it was not filed within fourteen days of the January 17, 1990, judgment, and therefore was not a timely motion. McIntire filed a petition for review of the Court of Appeal's decision with this Court, which was granted.

Under Idaho Appellate Rule 14, an appeal must be filed within 42 days from any appealable judgment. However, "[t]he time for an appeal from any civil judgment, order or decree in an action is terminated by the filing of a timely motion which, if granted, could affect any findings of fact, conclusions of law or any judgment in the action (except motions under Rule 60 of the Idaho Rules of Civil Procedure or motions regarding costs or attorney fees), in which case the appeal period for all judgments, orders and decrees commences to run upon the date of the clerk's filing stamp on the order deciding such motion." A rule 59(e) motion is a motion which will terminate the 42–day period if it is timely. *Marcher v. Butler*, 113 Idaho 867, 749 P.2d 486 (1988); *State v. Goodrich*, 104 Idaho 469, 660 P.2d 934 (1983). Therefore, we must determine whether the motion in this case was in fact timely made.

Rule 59(e) states: "A motion to alter or amend the judgment shall be served not later than fourteen (14) days after entry of the judgment." The rule only requires the

motion to be *"served,"* not filed, no later than fourteen (14) days after entry of the judgment to be timely. *See Parks v. Ford,* 68 F.R.D. 305, 307 (D.C.Pa.1975) ("[T]he rule merely requires that the motion be served, rather than be filed of record...."); MOORES FEDERAL PRACTICE, Vol. 6A, § 59.12[1].

The Court of Appeals found that appellant's motion was untimely because it was not filed with the clerk of the court within fourteen days. The Court of Appeals relied on this Court's decision in *Hamilton v. Rybar,* 111 Idaho 396, 724 P.2d 132 (1986). In that case, this Court held that a motion to reconsider, which was treated as a motion to alter or amend the judgment pursuant to I.R.C.P. 59(e), was untimely because it was not "filed" within the time limits of the rule. The language in *Hamilton* was followed by the Court of Appeals, but that language is not in conformance with the language of Rule 59(a), which ties the time limit to service of the motion, not filing of the motion. In *Hamilton* this distinction was not important because there was no showing in the opinion or record that the motion was either served or filed within the time limit of the rule. To the extent *Hamilton* has confused the distinction between service and filing, it should be disregarded.

In this case, the record demonstrates that appellant served the motion by mail within 14 days of the February 17, 1990, judgment. I.R.C.P. 5(b) provides that service of a pleading may be made upon the party's attorney by mail, and that service by mail is complete upon mailing. Accordingly, the service in this case complied with Rule 59(e), and the motion to alter or amend the judgment was timely under I.A.R. 14 and terminated the 42–day period for appeal. *Marcher v. Butler, supra; State v. Goodrich, supra.* The 42–day appeal period began again on May 22, 1990, the day the trial court denied the Rule 59(e) motion. Since appellant's appeal was filed on July 2, 1990, within 42 days of the denial of her Rule 59(e) motion, appellant's appeal was timely filed and should not have been dismissed. We therefore vacate the Court of Appeals opinion dismissing appellant's appeal.

## II

Because we have determined that the appellant's appeal was timely, we now turn to the substantive issues raised in the appeal. The facts that frame the remaining issues generally are as follows.

McIntire owned a motel in Kamiah, Idaho, which was in need of management. McIntire entered into an oral agreement with the Orrs to manage the motel for a managerial fee of $500 a month plus housing, as well as $300 a month for cleaning and laundry.

In October 1984, Orrs entered into negotiations with McIntire for the purchase of the motel. As a result of those negotiations, in February of 1985 a printed form "Exchange Agreement" was prepared and signed by McIntire and sent to the Orrs for their signature. Under the agreement, McIntire agreed to sell the motel to the Orrs, who were to assume the existing $50,000 encumbrance. As a portion of the down payment, the Orrs were to transfer title to two houses located in Milan, Washington, to McIntire and were to receive credit for the $42,000 equity in the two houses, which were valued at $50,000 and had an existing contract indebtedness between them of $8,000, which was to be assumed by McIntire. The Orrs were also to receive credit for fees owed to them for past managerial and cleaning services. The remaining balance on the purchase price for the motel was to be evidenced by two equal promissory notes secured by a deed of trust. The Orrs executed the exchange agreement on March 22, 1985. The trial court found that "the parties made a binding exchange agreement in March, 1985." No issue has been raised by appellant questioning that conclusion by the trial court.

The exchange agreement provided for the exchange of deeds, the execution of a lease,[1] and other documents, and the trans-

---

1. The exchange agreement provided that the    "land under the motel is to be excluded from

action contemplated a California escrow company acting as closing agent. When the escrow had not closed by December 6, 1986, over a year and a half after the execution of the exchange agreement, the plaintiff McIntire unilaterally attempted to cancel the transaction.

The trial court concluded, based upon the evidence, that the exchange agreement "was unilaterally rescinded by the plaintiff in December, 1986, leaving the parties in a situation where the status quo cannot be reinstated." No issue has been raised by appellant regarding that conclusion of the trial court either. Appellant's brief asserts that "since both parties to this action sought the equitable remedy of rescission, the district court attempted to fashion an equitable remedy that would be fair and just to both parties to the exchange agreement. For the most part, the district court's remedy appeared equitable and was supported by substantial evidence." However, appellant does question two of the trial court's findings relating to its equitable remedy of rescission and restitution.

■ Appellant asserts as error the district court's conclusion that it was McIntire's fault that the Orrs lost their $42,000 equity in the Washington homes traded to McIntire because McIntire failed to pay the underlying contracts after the execution of the exchange agreement and, as a result, the "underlying mortgages" on the Washington houses were foreclosed, resulting in the loss of the Orrs' $42,000 equity which the trial court set off against the rent it found that the Orrs owed McIntire. Appellant further claims as error the trial court's finding that the Washington houses were in a current status in March of 1985, the date of the execution of the exchange agreement. While the record does not reflect whether the "underlying mortgages"

on the Washington houses were in a current status in March of 1985, there is evidence in the record that, in November of 1986, after execution of the exchange agreement, but prior to McIntire's attempted unilateral cancellation of the exchange agreement, the Orrs brought current all of the delinquent contract payments, insurance and taxes on the Washington houses. At the time of McIntire's attempted unilateral cancellation of the exchange agreement on December 6, 1986, there was evidence in the record that the Washington properties were in a current status. Furthermore, although the evidence was conflicting, there was evidence to support the trial court's Finding IV that, "Upon execution of the [exchange] agreement, the parties treated the motel as if owned by the defendants, and the houses as if owned by the plaintiff [McIntire]." For example, the Orrs, with McIntire's acquiescence, commenced making the payments on the underlying encumbrance on the motel property. Further, after the execution of the agreement, the Orrs were no longer paid or credited for the $500 per month management fee and $300 per month cleaning fee. Therefore, we find no error in the district court's conclusion that the $42,000 lost equity in the Washington homes was "foreclosed against due to plaintiff's fault" in failing to pay the "underlying mortgages" on the Washington houses after the Orrs brought them current.

■ Appellant asserts further that the trial court awarded McIntire the equitable remedy of rescission, but awarded the Orrs the equitable remedy of specific performance by crediting them for their $42,000 equity in their Washington houses, which McIntire argues was, in effect, to grant the Orrs specific performance on their part of the exchange agreement, while McIntire was only granted rescission and return of her property.[2] However, the trial court

---

purchase, with 50 year land lease being given. Bona fide land lease to be executed before close of escrow on terms and conditions as stated below." However, as the transaction progressed, a deed to the real property on which the motel was located, and a deed of trust back, were executed and subsequently recorded by the escrow agent.

2. Upon rescission of a contract, "the objective is to treat the contract as never having existed and to return the parties to the status quo before the contract was formed ..." *Blinzler v. Andrews,* 94 Idaho 215, 219, 485 P.2d 957, 961 (1971). "Restitution is universally ordered following rescission to achieve the pre-contract status quo." *Murr v. Selag Corp.,* 113 Idaho 773, 778, 747

was unable to "return the parties to the status quo before the contract was formed," *Blinzler v. Andrews*, 94 Idaho 215, 219, 485 P.2d 957, 961 (1971), because, as the trial court found, the $42,000 equity was lost due to the plaintiff's fault in failing to keep up the payments on the Washington houses. The remedy of rescission and return of the Washington houses to the Orrs was not available, and therefore the trial court did not err in ordering rescission of the exchange agreement, and ordering restitution to the Orrs for their lost equity, since the trial court could not return the Washington houses to the Orrs.

■ The final claimed error on appeal relates to the trial court's decision that McIntire must reimburse the Orrs for $1,253 for the advanced escrow fees paid by the Orrs to the California escrow closing agent. McIntire asserts that the trial court erred in requiring McIntire to reimburse the Orrs for the $1,253 escrow deposit fee. We agree. Both the trial court's memorandum opinion and its findings of fact are devoid of any support or rationale for the court's judgment requiring McIntire to reimburse the Orrs for the $1,253 which the Orrs paid to the California escrow agent. The court made no factual finding regarding the $1,253 escrow fee, and there was no evidence that McIntire benefited in any way from that payment. The testimony of Mrs. Orr clearly established that the Orrs paid the money to the escrow company at the request of the escrow company. While the Orrs' counsel argued that McIntire controlled the escrow company, there was no testimony to support that argument. McIntire herself testified that she had filed a lawsuit against the escrow company in California for prematurely recording the deeds to both properties, Exhibits 4 and 5, before the transaction had closed. As far as the record reflects, the money and other documents signed by the Orrs are still with the escrow company. Accordingly, the trial court erred in awarding restitution to the Orrs from McIntire for the $1,253 escrow deposit fee which the Orrs paid to the California escrow company.

The judgment of the trial court in favor of the Orrs in the sum of $16,932 is vacated, and the matter is remanded to the trial court to enter a new judgment in the sum of $15,679, reflecting an elimination of the $1,253 for the escrow fee paid by the Orrs.

Judgment vacated and remanded for further proceedings. Each party to bear their own costs and attorney fees.

BISTLINE and McDEVITT, JJ., and SCHROEDER, J. Pro Tem., concur.

JOHNSON, Justice, concurring specially.

I concur in the Court's opinion and write only to point out the substantial and competent evidence upon which I rely as supporting the trial court's finding that upon execution of the exchange agreement, the parties treated the houses in Washington as if owned by McIntire.

Nellie Orr testified that after she signed the assignment of the contract and deed of trust relating to the Washington houses, McIntire and her partner wanted to know if Orr would keep the houses rented and send them the rent money. Orr said she would not. McIntire's partner then wanted to know if there was a real estate company in the area where the houses were that handled renting properties. Orr said she was sure there were and that McIntire's partner could contact them.

Orr also said that she made no further efforts to generate income from the houses.

P.2d 1302, 1307 (Ct.App.1987). *See also* D. DOBBS, HANDBOOK ON THE LAW OR REMEDIES § 11.3 at 722 (1973).