438 P.2d 813

Lowell D. PERRY, Plaintiff and Appellant,

v.

Earl E. WOODALL, Defendant
and Respondent.

No. 11014.

Supreme Court of Utah.

March 22, 1968.

George K. Fadel, Bountiful, for appellant.

John W. Lowe, of Brayton, Lowe & Hurley, Salt Lake City, for respondent.

TUCKETT, Justice:

The plaintiff commenced this action to recover installments due upon a written contract for the sale of Buy Wise Drugs, Inc., to the defendant. The defendant Woodall filed a counterclaim wherein he claimed that the plaintiff Perry misrepresented the assets as well as the debts owed by the corporation. The court found that Woodall had been induced to enter into the sale by the fraudulent misrepresentations of Perry and granted to Woodall a judgment in the sum of $4,835.76, and also found that the defendant was entitled to rescind. The plaintiff is here seeking a reversal of that judgment.

Prior to April 1, 1964, Perry was the owner of all the corporate stock of Buy Wise Drugs, Inc., which operated a drugstore in the Rose Park area of Salt Lake City. Perry managed the business on behalf of the corporation and Woodall had been for a number of years a pharmacist employed at the drugstore. From time to time prior to April 1, 1964, Perry and Woodall discussed the possibility of Woodall purchasing the business. These discussions resulted in a written offer by Woodall dated March 13, 1964, to purchase Perry's stock upon certain terms set out in the offer. The offer was accepted on March 14, 1964, and Woodall took over the management and assumed control of the business on April 1, 1964.

The contract resulting from Woodall's offer and Perry's acceptance obligated Woodall to pay $3,500 before April 25, 1964, and to invest $6,500 in the capital stock of Buy Wise Drugs, Inc., before March 24, 1964, which sum was to be used to pay current accounts of the business. In addition to the above sums Woodall agreed to give Perry his promissory note in the sum of $46,500 and Perry agreed to assume and pay an obligation to the credit association in the sum of $23,800. It was also agreed that Woodall would pay installments of $1,000 per month upon the note.

Prior to the making of the contract of sale as above set forth, Woodall had been furnished a report by an inventory service which reported the merchandise and physical assets of the store as being in excess of $47,000. Woodall had also been furnished a balance sheet as of February 10, 1964, prepared by the corporate bookkeeper, which showed liabilities of about $47,000, including current liabilities on trade accounts payable of over $20,000.

On July 18, 1964, Perry furnished to Woodall an affidavit which listed the liabilities of the business as being in the sum of approximately $61,000. After receipt of the affidavit, Woodall communicated to Perry through his attorney by letter, which communication pointed out that a number of items listed on the affidavit were person-

al debts rather than corporate liabilities. The communication also contained a new proposal by Woodall to purchase the business. In the new offer Woodall proposed to pay to Perry the sum of $10,000 for the latter's interest in the assets and inventory. Woodall had failed to pay to Perry all of the sums due under the first offer.

The negotiations between the parties did not result in a second agreement. Woodall continued to operate the business until September 7, 1964, at which time he was appointed receiver in an action commenced by one of the creditors of the business. Woodall continued to act as receiver until January 1966, at which time he resigned and a successor was appointed. Woodall continued to manage the business for the successor receiver until March 1966, at which time he purchased the assets of the business at a receiver's sale for the sum of about $45,000.

The court found that Woodall elected to rescind the purchase agreement in July after he had received the affidavit of Perry setting out all of the obligations of the business. We are of the opinion that the record does not support the finding of the court in this regard. One who claims he has been deceived and elects to rescind his contract by reason of the fraud or mis-representation of the other contracting party must act promptly and unequivocally in announcing his intention. The facts in this case would indicate that Woodall, after learning of the extent of the indebtedness of the corporation he had purchased in July 1964, did not elect to rescind the contract at that time, but rather expressed dissatisfaction with his purchase of the business and offered to renegotiate the terms of that purchase agreement. Woodall, after learning all of the facts, if he then considered that he had been defrauded, had a duty to notify Perry promptly of his election to rescind the contract and to also tender back to Perry the assets of the corporation, as well as the corporate stock involved in the transaction. The law is well settled that one electing to rescind a contract must tender back to the other contracting party whatever property of value he has received. Woodall elected to retain possession of the corporate assets and to carry on the business until it was taken over in the receivership proceedings. We are of the opinion that Woodall waited too long, and that he cannot now rescind the contract. We believe that our decision in this respect is in keeping with prior decisions of this court and courts of other jurisdictions,[1] and we wish to especially call attention to the case of Taylor v. Moore,[2] wherein this court

---

[1]. Peterson v. Hodges, 121 Utah 72, 239 P.2d 180; Erisman v. Overman, 11 Utah 2d 258, 358 P.2d 85; E.T.C. Corp. v. Title Guarantee & T. Co., 271 N.Y. 124,

[2] N.E.2d 284, 3 N.E.2d 471; see also 105 A.L.R. 1012.

[2]. 87 Utah 493, 51 P.2d 222.

quoted with approval the language of the case of Shappirio v. Goldberg,[3] a decision of the United States Supreme Court, where the following language was used:

It is well settled by repeated decisions of this court that where a party desires to rescind upon the ground of misrepresentation or fraud, he must, upon the discovery of the fraud, announce his purpose and adhere to it. If he continues to treat the property as his own the right of rescission is gone, and the party will be held bound by the contract.

The judgment of the trial court is reversed and the case is remanded to that court for a new trial. Appellant is entitled to costs.

CROCKETT, C. J., and CALLISTER, HENRIOD and ELLETT, JJ., concur.

3. 192 U.S. 232, 24 S.Ct. 259, 48 L.Ed. 419.