625 P.2d 1089

William D. CADY and Beatrice N. Cady, Cross-Claimants, Appellants,

v.

E. C. PITTS and Richard Scheu, Cross-Defendants, Respondents,

and

E. C. PITTS, Richard Scheu, and Servisoft of Boise, Inc., Counter-Claimants, Respondents,

v.

William D. CADY and Beatrice N. Cady, Counter-Defendants, Appellants.

No. 12871.

Supreme Court of Idaho.

March 19, 1981.

Rehearing Denied April 23, 1981.

---

James E. Risch, of Risch, Goss & Insinger, Boise, for cross-claimants, appellants and counter-defendants, appellants Cadys.

Michael E. Donnelly, of Skinner, Donnelly, Fawcett & Mauk, Boise, for cross-defendant, respondent and counter-claimant, respondent Richard Scheu.

Jeffrey M. Wilson, of Matthews, Lee & Wilson, Boise, for cross-defendant, respondent and cross-claimant, respondent E. C. Pitts.

SHEPARD, Justice.

This was originally an action by Consolidated American Securities Holding, Inc. (CASH) and Water Refining Company, Inc. against defendants and cross-claimants Cadys and against defendants and cross-claimants Pitts and Scheu. The original litigation grew out of the sale of the Cadys' water conditioning business to Pitts and Scheu, and, among other relief, CASH sought and obtained injunctive relief preventing the conduct of that business by Pitts and Scheu. After the original complaints were dismissed prior to trial, the trial court heard the cross-claim of the Cadys against Pitts and Scheu and the cross-claim of Pitts and Scheu against the Cadys.

The Cadys for some years had conducted a water conditioning business, which included the sale, lease and service of water conditioners and the sale of supplies for water conditioners. During the conduct of the Cadys' business, they had entered into contracts with Servisoft, a division of Water Treatment Corporation, and with CASH, a subsidiary of Water Refining Company, Inc. Although not totally clear, it appears that such contracts constituted a financing scheme wherein the Cadys would acquire water softening units from Water Refining Company, the Cadys would lease those units

to individual customers and assign those leases to CASH. CASH would collect the rentals from the individual customers and apply at least a portion thereof to the Cadys' obligation to Water Refining Company.

One of those agreements provided that as an inducement to CASH, and as security for the Cadys' performance of obligations, the Cadys granted to CASH a security interest in all units manufactured by Water Refining, owned by the Cadys, and leased to customers. Another provision of the Cady-CASH agreement provided "during the term of this agreement the dealer [Cady] shall not sell, assign, transfer or grant any security interest in any leases to anyone other than CASH," and "dealer shall have no right to assign this agreement or any right or interest hereunder without prior written consent from CASH, and upon full compliance with conditions governing such assignment as imposed by CASH." A further provision of the agreement indicated that if Cadys defaulted under any of the terms and conditions of the agreement, CASH might then "assume control and operation of the dealer's business with respect to any or all of the leases covered by the agreement." At the time of the events in question here, it appears that the Cadys were obligated to Water Refining Company in the amount of approximately $44,000, which sum represented units acquired by the Cadys from Water Refining Company. Some, if not all, of those units had been leased to individual customers of the Cadys, which leases had been assigned to CASH and CASH was collecting the rentals therefor.

During the summer of 1975, there were negotiations between the Cadys and Scheu and Pitts, which culminated in the sale of the Cadys' business to Pitts and Scheu under a sales agreement dated September 1, 1975. The subject of that sale was denominated as "the assets and the business of the seller, which business is the water conditioning business and includes the sale, lease and service of water conditioners and the sale of supplies for water conditioners." The tangible property included in the sale was specifically listed and included office furniture, trucks, tools, "approximately 115 service accounts" and "approximately 210 automatic rentals." The contract provided "with respect to each of said items of property to be conveyed, the seller expressly warrants the title and that all of said property is free and clear of any lien or encumbrances, except as may be otherwise expressly provided in this agreement. Seller agrees to save and hold the buyers harmless from and against any and all claims of creditors or other persons claiming any interest in any items of said property." The agreement of sale further indicated that the Cadys owed Water Refining Company, Inc. approximately $44,000 for the purchase of water conditioning units and the purchasers assumed liability for the balance due and owing on that debt. The contract of sale was accompanied by a bill of sale transferring the same items of property which were included in the contract of sale, and that bill of sale also warranted title to the items of property.

Pitts and Scheu contended at trial that while they were aware of the Cadys' obligation to Water Refining Company and were aware that a financing arrangement existed under which CASH collected the rentals and made payments therefrom on the Water Refining Company obligation, nevertheless they asserted they were unaware of the existence of the Cady-CASH agreement and particularly those provisions thereof which related to the non-assignability of the Cady interest in the agreement or the water softening units and those enforceability provisions of that agreement which, upon breach, permitted CASH to take over the Cady business and accelerate the obligation due to Water Refining Company. Conversely, the Cadys contended that they made all of the Cady-CASH contract documents available for inspection by Pitts and Scheu and that Pitts and Scheu were or should have been aware of the provisions of the Cady-CASH contract documents.

Pitts and Scheu contracted to pay the sum of $10,000 down and $45,000 payable in monthly installments of $546.02, starting October 15, 1975. As above noted, Pitts

and Scheu also agreed to assume the $44,-000 obligation owing to Water Refining Company.

Pitts and Scheu took over the operation of the business on September 1, 1975. The business was operated out of a building located on land behind the Cadys' residence and Pitts and Scheu paid rental to the Cadys. Pitts and Scheu operated the business thereafter until approximately mid-November, 1975, when they wrote to CASH indicating that 34 of the rental units had been converted into sales and inquiring of CASH as to the payoff amount for those units. CASH did not reply to that inquiry, but almost immediately filed the instant action which resulted in injunctive relief in favor of CASH and effectively prevented Pitts and Scheu from conducting their business.

The Cadys counterclaimed against Pitts and Scheu for the unpaid $44,000 sales obligation. Pitts and Scheu in turn counterclaimed against the Cadys, alleging fraud and failure to disclose the rights held by CASH and a breach of the warranty of title contained in the contract and the bill of sale.

In the interim, Pitts and Scheu continued to make the monthly payments on the $45,-000 obligation to the Cadys until December, 1975 and to make rental payments for the real property to the Cadys until January or February of 1976.

Although the record is unclear, apparently following the issuance of the injunction prohibiting the conduct of the business by Pitts and Scheu, the business remained at a standstill until sometime in January or February of 1976. Again, the record is unclear, but apparently the Cadys retook possession of the business premises, together with the physical assets located thereon. The record indicates that of the on-premises physical assets conveyed to Pitts and Scheu, the Cadys retook possession of everything, with the possible exception of some tools. No evidence was introduced indicating the value of those few items which were not retaken by the Cadys. As to those water conditioning units which were located in custom-ers' homes, the record is confused and unclear. As to those units, the Cadys contended at trial and on appeal that some of those units had been sold by Pitts and Scheu and the proceeds converted. Pitts and Scheu contended, on the other hand, that they had brought additional water conditioning units into the business. In any event, the record is devoid of any evidence indicating the value of the units allegedly sold by Pitts and Scheu, any amount of money received from such sales or any monetary amount of damage sustained by the Cadys as a result thereof.

 The trial court held that the title to the water conditioning units was warranted in both the contract of sale and the bill of sale. The trial court found that such warranties of title were breached. The trial court further found that the Cadys' non-disclosure of the security interest in the water softening units imposed by the Cady-CASH contract and the additional provisions in that contract which imposed restraints on the free conduct of the business amounted to fraud on the part of the Cadys. The court found that Pitts and Scheu were not aware of those provisions of the Cady-CASH contract and that while the Cadys' failure to disclose may have been inadvertent, the Cadys had an express duty to advise Pitts and Scheu of the existence of the restraints contained in the Cady-CASH contract because the Cady-CASH contract made the conduct of the business impossible without the consent of CASH. We agree. *See Russ v. Brown*, 96 Idaho 369, 529 P.2d 765 (1974); Restatement of Contracts, § 472, Comment b (1932).

 The trial court concluded that the actions of the parties in effect amounted to a rescission of the contract and the parties were entitled to be returned to the status quo existing prior to the purported sale of the business. We see no other basis upon which the court could have adequately resolved the dispute between the parties. On the one hand, the Cadys sought payment of $45,000 as partial purchase price of a going business. As a result of provisions in the Cady-CASH contract, the Cadys were not

free to sell the business and the warranties of title in the Cady-Pitts-Scheu contract were violated. The "going" business was effectively shut down when CASH filed the instant action approximately sixty days after the contract of sale.

 The Cadys assert that the trial court erred in holding that a rescission of the contract of sale had taken place since such relief was not sought by Pitts and Scheu in their pleadings. We disagree. It is clear that a trial court may and is required to grant any relief to a party which the evidence demonstrates a party is entitled to, whether or not such has been specifically requested. *Rowe v. Burrup,* 95 Idaho 747, 518 P.2d 1386 (1974); I.R.C.P. 54(c). *See* 10 Wright & Miller, Federal Practice & Procedure, § 2664, 104–105 (1973). Here the record discloses that the issue was tried at least implicitly by the parties. *See* I.R. C.P. 15(b).

The trial court noted that upon a decree of rescission, the question then becomes one of damages to restore the status quo as much as possible. As hereinbefore noted, the record contains no indication whatsoever of the amount of damages, if any, which the Cadys would sustain by a rescission and a restoration of the status quo. The trial court found that, except for the down payment in the amount of $10,000, Pitts and Scheu had failed to prove their additional damages, if any, by any degree of reasonable certainty. That finding of the trial court is not challenged by any cross-appeal on the part of Pitts and Scheu.

We hold that the trial court's findings and conclusions contained in its memorandum decision are sustained by the evidence and will not be disturbed on appeal. Judgment of the trial court is affirmed. Costs to respondents.

BAKES, C. J., and McFADDEN, BISTLINE and DONALDSON, JJ., concur.