708 P.2d 871

**BARNARD & SON, INC., an Idaho corporation, Plaintiff-Appellant-Cross Respondent,**

v.

**Paul AKINS and Mary Akins, husband and wife, Defendants-Respondents-Cross Appellants,**

**and**

**First Idaho Escrow Corporation, an Idaho corporation, Defendants.**

**No. 14120.**

Supreme Court of Idaho.

July 12, 1985.

Rehearing Denied Nov. 21, 1985.

---

1. Alexis De Tocqueville, *Democracy in America,* Phillips Bradley (ed.) (New York: Alfred Knopf, Inc., 1944).

Clemons, Cosho and Humphrey, P.A., and John S. Chapman (argued) and Christopher W. Clark, of Martin, Chapman, Martin & Haff, Boise, for plaintiff-appellant-cross-respondent. Barnard & Son, Inc.

Henry F. McQuade, of Adamson & Young, Nampa, for defendants-respondents-cross-appellants.

SHEPARD, Justice.

This is an appeal from a judgment and from denial of certain post-trial motions. These holdings by the trial judge in effect decreed a forfeiture of plaintiffs-purchasers' interest in a land sale contract. We affirm in part, reverse in part, and remand.

Plaintiff-appellant Barnard & Son, Inc., contracted to purchase over 100 acres of real property from defendants-respondents Akins'. The total purchase price was approximately $200,000, as to which Barnard paid $30,000 down, assumed a mortgage of approximately $26,000, and promised to make annual payments of $16,000 on June 1 of each succeeding year on the principal and interest owing. That agreement was entered into on May 11, 1978.

Significantly, the contract allowed the purchasers Barnard to prepay any sums due under the contract. Since the Akins' were concerned about the tax consequences of the sale of the property, they desired any such prepayment moneys to be paid into a trust, which the contract required the Akins' to establish not later than January 15, 1979. The contract further required the Akins' to execute a separate warranty deed to a ten-acre tract of land, together with an easement providing access to that tract of land. Lastly, the contract required the Akins', within a reasonable time, to provide title insurance showing marketable title.

It was not until May 11, 1979 that the Akins' furnished to Barnard a commitment for a title insurance policy. That commitment indicated certain clouds upon the title to the property. Barnard informed the Akins' that a clouded title would be unacceptable, and Barnard, on May 17, 1979, demanded that the Akins' clear the title to the property.

Meanwhile, on April 13, 1979, Barnard served a notice of default upon the Akins', specifying the Akins' failure to establish the trust by January 15, 1979, and the Akins' failure to deed to Barnard the ten acres of real property together with the easement. Akins' were given 30 days to cure the defaults. The warranty deed to the ten acres was signed by the Akins' on or about June 10, but the trust was not established. By this time, a dispute had apparently arisen between the parties regarding the location of the easement to furnish access to the ten-acre tract. That dispute continued and was never resolved.

As of June 1, 1979, Barnard had not received the title insurance policy, the Akins' had failed to establish the trust for the deposit of any prepayment moneys, and the dispute concerning the location of the easement continued. Thus, Barnard did not make the June 1, 1979 annual payment as specified by the contract. On June 4, 1979, the Akins' served upon Barnard a notice of default, specifying Barnard's failure to make the June 1, 1979 annual payment and giving Barnard 30 days to cure said default. On June 15, 1979, Barnard deposited with the escrow holder all sums then due, but that payment was conditional upon the Akins' curing the default specified in the default notice served upon Akins' on April 13, 1979. In July 1979, Akins' refused to accept the conditional annual payment which had been deposited in escrow, and rather took possession of all the documents from the escrow holder, declaring the contract forfeited.

On August 3, 1979, Barnard instituted this action, seeking specific performance and damages from the Akins'. The cause was tried before the court, with an advisory jury. Following trial and an advisory verdict, the court denied specific performance of the contract, awarded Barnard damages against Akins' for $283.73, and awarded Akins' their costs and attorney's fees.

Thereafter, Barnard made motions for judgment notwithstanding the verdict, for a new trial, and for rescission of the contract. All those motions were denied, and judgment was entered. This appeal resulted.

It is clear that the trial court in the instant case deemed itself to be sitting as a court of equity. For example, the court stated:

"A review of the evidence in this case leads the court to the conclusion that, weighing the equities, specific performance should not be granted. It is a rule of long standing in Idaho that where the entire facts are presented in an action for specific performance of a contract, the rights of the parties should not be adjudged on technical questions so as to do injustice, but rather the court should give such judgment as will be just and equitable...

\* \* \* \* \* \*

"Here a balancing of the equities between the parties weighs more heavily in favor of the defendants."

At a later point, the court commented upon the motion of the Akins' to expunge certain documents from the public records, stating:

"While this cloud could be removed in a separate legal action, the removal of that cloud would be an equitable matter, which this court, given all of the evidence already submitted herein, should address at this time without causing further litigation between the parties.

"In the interest of justice and equity, the recording should be removed from the title to the defendant's property."

 We agree with these comments of the trial judge regarding the equitable jurisdiction of the court, but deem a further maxim of equity to be applicable in the

instant action, that being that once the equitable jurisdiction of the court has attached, the court should retain jurisdiction to resolve all portions of the dispute between the parties and render equity to all parties without regard to the technical niceties of pleading and procedure. *Watkins v. Watkins,* 76 Idaho 316, 281 P.2d 1057 (1955); *Finlayson v. Waller,* 64 Idaho 618, 134 P.2d 1069 (1943). *See* I.R.C.P. 15(b), 54(c); *Cady v. Pitts,* 102 Idaho 86, 625 P.2d 1089 (1981). In the instant action, although plaintiff Barnard sought specific performance of the contract, the trial court in denying such relief implicitly decreed a forfeiture of Barnard's interest in the contract. Such forfeitures are disfavored in Idaho law. We deem that the trial court erred in failing to apply the equitable remedy which was available to it and which the evidence discloses was applicable to the circumstances, that remedy being rescission.

While it is correct that rescission was neither specifically pleaded nor sought as a remedy, nevertheless, as aptly stated by the trial court:

"The pleadings, exhibits and affidavits filed to date inferentially reveal that neither of the parties have been completely culpable nor totally blameless during the post execution period. For example, both parties found it necessary to serve good faith notices of default upon the other in order to obtain the performances promised in the written contract."

The case at hand is somewhat similar to *Huggins v. Green Top Dairy Farms,* 75 Idaho 436, 273 P.2d 399 (1954), wherein the trial court had, as here, essentially declared the forfeiture of a purchaser's interest in a contract. On appeal, this Court did not hesitate to reverse that judgment by requiring return of the sums paid by the sellers and remanding for a new trial to determine the reasonable rental value of the property for the time during which it had been held by the purchaser.

■ In the instant case, the trial court denied Barnard the remedy of specific performance. Although he did not expressly so state, the trial court apparently conclud-

ed that Barnard & Son, Inc. was not entitled to specific performance because it had breached the contract by placing conditions upon its payment into escrow of the June 1, 1979 annual installment. Again, though not expressly stated, the trial court apparently concluded that the conditions stated by Barnard were improper. The court held that Akins' failure to establish the trust on or before January 15 was irrelevant, because Barnard had not previously tendered any funds for deposit into the unestablished trust. Insofar as the Akins' failed to grant an easement for access to the ten-acre tract, the trial court found that the location of the easement sought by Barnard was not specifically agreed upon between the parties to the contract. We do not disagree with the decision of the trial court in denying specific performance and we will not disturb that exercise of his discretion. *See,* however, *Associated Developers Co. v. Infanger,* 85 Idaho 158, 376 P.2d 496 (1962).

■ We do, however, disagree with that portion of the trial court's decision holding that the failure to provide title insurance was not a breach of the contract by the Akins'. The trial court stated:

"From the evidence presented, this court is convinced that the defendants were not in default in providing the title insurance policy within a reasonable period of time as required by the contract, considering the conduct of the parties in respect to the contract and the condition of the title to the property disclosed by the preliminary commitments for title insurance."

It is undisputed and is indeed stipulated by the parties, and the trial court found:

"15. That under the terms of the agreement of sale entered into between the parties on May 11, 1978, the defendants were to provide to the Plaintiff clear title to the property that was the subject matter of the sale.

"16. That the title commitment given to the Plaintiff by the Defendants showed clouded title.

"17. That upon receipt of the title commitment Plaintiff demanded that the title to the property be cleared by the Defendants."

Likewise, it is undisputed from the record that the final policy of title insurance did not issue until after the Akins' had terminated the contract, removed all of the deeds and other documents from the escrow holder, and forfeited the contract, and until after this lawsuit had been initiated.

Under a similar set of circumstances, this court said in *Fajen v. Powlus*, 98 Idaho 246, 248–249, 561 P.2d 388, 390–391 (1977):

"Powluses cannot be required to perform their obligations under the contract and yet be compelled to take something less than that for which they bargained. A purchaser of real property who bargained for marketable title thereto cannot be required to accept property with an admitted cloud on the title...

\* \* \* \* \* \*

"On the other hand, as stated in *Giffin v. Faulkner*, 50 Idaho 190, 195, 294 P. 521, 522 (1930):

'Forfeitures are not favored by the court. [citations] One may not declare a forfeiture while he himself is in default. [citations] The duty of respondents, under the contract, to pay the $900 on or before November 1, 1928, was an obligation concurrent with the duty on the part of appellants to "furnish an abstract of title showing said lands to be free and clear of any and all incumbrances," and justifies the conclusions of the trial court that the Faulkners could not require performance by the Giffins until they (the Faulkners) had tendered the abstract of title as provided in the contract.'

"In the case at bar, Fajen was himself in default of the contract and not entitled to forfeiture and the trial court's granting of forfeiture was error." (Bracketed and parenthetical material in original.)

*See also Bob Daniels and Sons v. Weaver*, 106 Idaho 535, 681 P.2d 1010 (Idaho App. 1984); *Bell v. Stadler*, 31 Idaho 568, 174 P. 129 (1918); *Boyd v. Boley*, 25 Idaho 584, 139 P. 139 (1914); Restatement (Second) of Contracts § 237 (1981).

It is asserted by Akins' that the result sought by Barnard in the instant case is contrary to *Blinzler v. Andrews*, 94 Idaho 215, 485 P.2d 957 (1971). To the extent that Blinzler is contrary to the holding in the instant action and that of *Fajen v. Powlus, Blinzler* is overruled.

■ There can be no argument but that one cannot declare a forfeiture of a contract where he himself is materially in default. *Associated Developers v. Infanger, supra; Fajen v. Powlus, supra; Huggins v. Green Top Dairy Farms, supra.* Thus, in the instant case, the Akins' were unable to declare a forfeiture while they themselves were in material default. The Akins' contracted to deliver a title insurance policy showing marketable title free and clear from all liens and encumbrances. Upon that contract provision Barnard had a right to rely, and having paid $30,000 down and paid the mortgage payment for 1978, he could not be required to invest further moneys into a pig in a poke. At the time that the Akins' served notice of default and sought to forfeit the contract rights of Barnard, and some eleven months after the execution of the contract, the Akins' still had not furnished a title insurance policy. Rather, they had provided only a commitment for such policy, which commitment admittedly indicated clouds on the title. Barnard demanded that the title be cleared. The trial court held that the title clouds were of no significance, and that, in any event, a title insurance policy had issued some time after the litigation started. A purchaser of real property will not be forced to accept something less than that for which he bargained. In this case, Barnard rightfully expected a marketable title free and clear of encumbrances. Further, we deem the issuance of a title policy at a later date to be irrelevant here. Prior to such issuance, the Akins' had seized all deeds and documents from the escrow holder, making the contract totally inoperable. One could hardly expect Barnard to go on

paying money into an escrow holder who no longer held any deeds or documents of title to which Barnard would be entitled upon completion of the contract payments.

■ It is argued that the trial court did not err in denying relief under the doctrine of rescission. We disagree. Although rescission was not specifically pleaded as a remedy sought by plaintiff Barnard, nevertheless we deem it to have been implicitly tried, and the trial court erred in failing to grant the remedy of rescission, which would have restored both parties to the status quo ante. The trial court also erred in failing to grant a new trial on the issues of unjust enrichment resulting to the Akins' from their forfeiture of the contract and the retention of the sums paid by Barnard. The trial court's orders denying Barnard's motion for a new trial and for rescission are reversed with instructions that Barnard be granted rescission of the contract. The court is directed to take further evidence regarding the fair rental value of the property or of any other appropriate measurement of the setoff to be awarded Akins' against the return to Barnard of the sums paid under the contract.

Costs to appellants. No attorney's fees on appeal.

BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, specially concurring.

## I.

Notwithstanding that there are the necessary votes overruling *Blinzler v. Andrews*, 94 Idaho 215, 485 P.2d 957 (1971), and it is accordingly overruled, the dissenting opinion would utilize it to affirm the judgment rendered below.

The *Blinzler* case, *Blinzer I* in 94 Idaho, was a highly questionable decision at the outset. Justice Shepard, joined by Justice McQuade, dissented:

I dissent. The district court found that the Andrews had not performed covenants in the contract requiring title insurance to be provided within a reasonable time and that the Blinzlers were

entitled to rescission. Thus, the only matter for decision here is the importance and materiality of the Andrews' breach of the covenant to furnish title insurance.

The contracts were signed by the parties in November and December, 1959. Some four years later the purchasers had still not received the title insurance policies and refused to make the annual payment which was then due. The purchasers had made down payments amounting to $16,000.00. Their annual payments were $6,250.00, together with interest at the rate of five per cent per annum on the deferred payments. Obviously, the purchasers had a very substantial financial interest and investment in the contract for the purchase of the real property. In my judgment, they were absolutely entitled to a guarantee, as would be provided by title insurance policies, that upon the payment of the large sums of money involved herein they would indeed obtain what they had paid for, i.e., a free and clear title to the real property.

To state, as does the majority opinion, that the purchasers had the duty of continuing to make the large financial yearly investment without any assurance of performance by the sellers, simply disregards what any person of common sense would have done when faced with such a situation. The fact that the purchasers were given possession of the farms and the right to farm them, and that easements were procured by the sellers and that an estate was probated, simply has no bearing on the principal question. The failure to furnish the title insurance policies, in my judgment, was a material breach of one of the most significant covenants contained in the contract.

After making the $16,000.00 down payment, the purchasers in 1960, requested the title insurance. The annual payments of $6,250.00, together with the interest on the unpaid balance, were made in December, 1960 and December, 1961. In December, 1962, the purchasers delivered the annual payment to the

escrow agent and directed that the agent should not transfer that money to the sellers until the title insurance policies were delivered. The purpose of the purchasers was defeated since the escrow agent nevertheless released the annual payment to the sellers. The following year the purchasers adopted another technique by refusing to make the December, 1963 annual payment until they had been furnished with the title insurance. Promptly thereafter, the sellers gave notice of default to the purchasers and of the sellers' intent to cancel the contract and retain all sums paid by the purchasers pursuant to the forfeiture clause of the contract.

In my judgment, the purchasers had acted more than reasonably in tolerating the continuing breach of the contract by the sellers' failure to furnish title insurance. It appears to me that they had attempted to obtain the performance of the sellers' duty to furnish title insurance and had failed. It is understandable that they had no desire to jeopardize their very substantial financial investment in the real property, and finally, as any reasonably minded person would, came to the conclusion that they had best stop such investment at some point in time until they received what they were entitled to under the contract, i.e., a guarantee that they would receive good title to the real property in return for their investment. Rather than receiving that guarantee, they received notice that the sellers intended to oust them from the property and retain all of the monies that the purchasers had previously paid. At that point, they gave notice of rescission and, in my judgment, were entitled so to do. The district court so held and the action of the district court should be affirmed.

> *Blinzler I, supra,* at 219–20, 485 P.2d at 961–62.

Notwithstanding the cogent views of Justice Shepard, the majority opinion reversed the district court on the *shameless pretext that the buyers had waived any and all right to rescind when they did not so declare when they first were not furnished with a policy of title insurance.* The majority misstated that the Blinzlers *refused* to make the 1963 payment. A review of that file, retrieved from the clerk's office shows, however, as Justice Shepard pointed out, that the payment was being withheld until a title policy was forthcoming. The basis of the majority's opinion was that rescission had to be promptly declared, or the right was waived, otherwise the party so entitled would be considered as "concurring in the continued validity of the contract." The buyers in *Blinzler I* never questioned the validity of the contract, however. It was on reliance in the contract that they based their claim to see a long overdue title insurance policy before making further payment—which was done on the sound advice of counsel.

The cases cited by the majority in support of the waiver holding—found at 94 Idaho at 218, 485 P.2d at 960, top of the right column, were wholly inapplicable. Each has been studied, and the only conclusion to be drawn is that those who joined the opinion for the court simply did not find the time to examine those cases. For instance, *Perry v. Woodall,* 20 Utah 2d 399, 438 P.2d 813 (1968) involved a claim of rescission for fraud in the inducement. The holding in that case, both proper and well-recognized, is that a person induced to enter into a contract by misrepresentation or other fraud on discovery thereof has two remedies, one of which is to rescind for the fraud, or, two, to stand on (affirm the contract) and sue for damages in fraud and deceit. Exercise of the first option must be promptly made. The other Utah case, *Farrington v. Granite State Fire Ins. Co.,* 120 Utah 109, 232 P.2d 754 (1951), held nothing more than that an insurance carrier which accepts premiums after a fire loss which it has investigated and had at hand at the time of thereafter receiving and keeping the premiums all of the facts upon which it would over a year later claim rescission because of the insured's misrepresentation and concealment, has waived the right to rescind. There are Idaho cases to the same

effect—all of which are as totally irrelevant as the cases cited by the *Blinzler I* majority—simply because the buyer in *Blinzler I* did not rescind for fraud in the inducement, but rather by reason of the arbitrary actions of the sellers in not producing a title insurance policy (placing them in default) and at the same time taking the papers out of escrow on a wrongfully declared forfeiture. With the sellers' (respondents') briefs before me, it must be said to the credit of their attorneys, that those cases were not cited to the court. The Milton Andrews' brief relied on *Metzker v. Lowther*, 69 Idaho 155, 204 P.2d 1025 (1949), and disagreed with the trial court's reliance on *Sorenson v. Larue*, 43 Idaho 292, 252 P. 494 (1926).

The James Andrews' brief relied on the *Metzker* case, and also on *Williams v. Havens*, 92 Idaho 439, 444 P.2d 132 (1968) and *Scogings v. Andreason*, 91 Idaho 176, 418 P.2d 273 (1966). Even the ill-starred majority opinion in *Blinzler I* did not find these cases applicable on the claimed waiver issue. Nor did the majority opinion make any mention of *Sorenson v. Larue*, 43 Idaho 292, 252 P. 494 (1926), *on remand* 47 Idaho 772, 278 P. 1016 (1929), let alone embark on an attempt to show that the district court had not properly applied it in a well-written memorandum decision.

The *Blinzler I* trial judge, the Honorable James G. Towles, would later, in rendering a decision in *Blinzler v. Andrews*, 95 Idaho 769, 519 P.2d 438 (1974) (*Blinzler II*), not hesitate to pass judgment on the majority opinion in *Blinzler I:*

> The undersigned has made an exhaustive review of the record in the trial court as well as of the opinion of the majority on appeal and trusts that the principles of waiver announced in the majority opinion would not long remain the rule of law in this state.[1]

*Blinzler I* this day goes into the well-deserved state of oblivion forecast for it by Judge Towles.

### II.A.

Without hesitation I am in agreement that the plaintiff is at the least entitled to a decree of rescission, and for that reason have concurred in the opinion for the Court and in the Court's judgment to reverse with directions. Logically, it appears that only the questionable use of a jury in this complex case and *Blinzler I* led the trial court astray. In addition to the authority cited in the Court's opinion for the proposition that one cannot declare a default when he himself is materially in default, the case of *Sorenson*, relied upon by the trial court in *Blinzler I*, is applicable, although there it went unmentioned.

### B.

Although the plaintiff may be content with rescission, it appears to me that the trial court erred in not granting a new trial for a multitude of reasons well-documented in the plaintiff's brief. I also note that at oral argument counsel for the defendants Akins et ux seemingly stipulated that if the plaintiffs would even at that late date tender the full amount of the purchase price, then the agreement would be fulfilled. Where the Court is not awarding a new trial, it would seem equitable to direct that the plaintiffs be extended that alternative.

DONALDSON, Chief Justice, dissenting.

The majority holds that the trial court erred in not allowing appellant Barnard to rescind the parties' contract. I dissent from that holding. The remedy of rescission is only available where the defendant has materially breached the contract. *McEnroe v. Morgan*, 106 Idaho 326, 678 P.2d 595 (Ct.App.1984). *See* 12 S. Williston, A Treatise on the Law of Contracts,

---

**1.** A beautiful case of poetic justice would have taken place had fate brought Judge Towles, now retired and sitting sometimes with this Court and also on the Court of Appeals, to sit on this case and participate in the overruling of *Blinzler I*, for which overruling he saw the immediate need fourteen years ago.

1445 (3rd Ed.1970). As this Court stated in *Blinzler v. Andrews,* 94 Idaho 215, 218, 485 P.2d 957, 960 (1971), rescission is an equitable remedy that totally abrogates the contract and should be granted only where one party has committed a breach so material that it destroys or vitiates the entire purpose for entering into the contract. There was no evidence of such a breach in the present case. The trial judge specifically found that, considering the conduct of the parties and the condition of the title disclosed by the preliminary commitment, the Akins were not in default in failing to provide title insurance within a reasonable period of time.

The majority relies on *Fajen v. Powlus,* 98 Idaho 246, 561 P.2d 388 (1977), for the proposition that the Akins materially breached the contract by failing to provide marketable title. In *Fajen,* we held that "[a] purchaser of real property who bargained for marketable title thereto cannot be required to accept property with an admitted cloud on the title." *Fajen, supra* at 248, 561 P.2d at 390. The sellers in *Fajen* were required to provide title insurance showing good and marketable title when the purchaser had paid $4,000.00 of the purchase price. It was uncontroverted that a building located on the purchased property encroached onto another piece of property and that title insurance could not be obtained to cover such a defect. Thus, we held that until the encroachment was cured, or until title to the two pieces of property was merged, the buyers could not be compelled to purchase the property.

The present case is clearly distinguishable. There is no cloud on the Akins' title. Neither Barnard's April 13, 1979, Notice of Default, nor the June 15, 1979, letter to the escrow holder which conditioned payment of the first installment, listed the absence of title insurance as a default. The evidence indicates that the Akins furnished Barnard with a Title Commitment Policy on May 11, 1979. In a letter accompanying that commitment, the Akins' attorney informed Barnard of his belief that two of the exceptions listed in the commitment were incorrect. He enclosed a copy of a letter he had sent to the title insurance company stating his objections to those exceptions and asking that they be removed. Barnard responded on May 17, by formally objecting to the above-mentioned exceptions in addition to one other exception contained in the commitment. The exceptions were subsequently removed and on August 15, 1979, a policy providing the required title insurance was issued.

The question of whether the title insurance policy was provided within a "reasonable time" as required by the contract, was a question of fact and, as such, was a question for the trial court. The trial court found that the Akins were not in default in failing to provide title insurance within a reasonable time. This finding was supported by substantial and competent evidence and should not have been disturbed on appeal. *See Circle C Ranch Co. v. Jayo,* 104 Idaho 353, 355, 659 P.2d 107, 109 (1983). Accordingly, the decision of the trial court should have been affirmed.