727 P.2d 893

Barbara CHILD and Joe Chester, Plaintiffs-Respondents-Cross Appellants,

v.

Albert E. BLASER, Defendant-Appellant-Cross Respondent.

No. 15961.

Court of Appeals of Idaho.

Sept. 8, 1986.

Rehearing Denied Nov. 20, 1986.

Petition for Review Denied Feb. 25, 1987.

Jon N. Wyman, Boise, for defendant-appellant-cross respondent.

Thomas B. Chandler, Boise, for plaintiffs-respondents-cross appellants.

SWANSTROM, Judge.

This appeal arises from an action filed in 1984 by Barbara Child and Joe Chester against Albert Blaser. Child and Chester sought money damages alleging that Blaser had breached a written agreement made in 1979 by which Blaser was to complete a subdivision and to convey three parcels in the subdivision to Child and Chester. Fol-

lowing trial, the district court awarded money damages to Child and Chester.

Blaser has appealed, raising numerous issues which we restate as whether the trial court erred in (1) ordering rescission; (2) finding mutual mistake and breach of contract; (3) failing to determine when the breach occurred; (4) denying Blaser's motion for dismissal of the action; and (5) failing to exclude the testimony of several witnesses and other evidence asserted to be irrelevant to the issues framed in the pleadings. On cross-appeal, Child and Chester contend that the trial court erred in not awarding prejudgment interest as part of its remedy. For reasons stated below we modify and affirm the judgment.

Barbara Child and her son, Joe Chester, first filed a complaint against Albert Blaser in 1977. The essence of the action was to enforce a 1973 earnest money agreement between Blaser and Dalice Chester, Child's ex-husband, providing that in return for plumbing services performed by Dalice and Joe, Blaser would convey three one-acre parcels of land in a subdivision he was developing. Apparently, Joe Chester selected one of those parcels for himself with the agreement of his father. In a divorce settlement Barbara (Chester) Child received the rights to the two parcels chosen by Dalice Chester.

The 1977 action was settled in January 1979 when the parties signed a settlement agreement (the "Agreement"). The Agreement called for Blaser to convey three specific parcels of land—two to Barbara and one to Chester—in exchange for dismissal of the lawsuit. The Agreement also required Blaser to "diligently undertake and consummate such steps as are needed to complete the final approval of said plat and the establishment of said subdivision." He agreed to furnish title insurance on the three parcels.

Blaser did convey the parcels to Child and Chester, but he encountered numerous difficulties in his attempt to obtain final approval of the subdivision. In 1980, the Ada County Board of Commissioners approved the preliminary plat, subject to several conditions. As of May 1981 all conditions for final approval were satisfied except the conditions relating to street improvements. At the date of the trial, in December 1984, Blaser was still disputing the Ada County Highway District's condition requiring that the subdivision's streets be paved. The failure to obtain approval from the highway district precluded filing of the final plat. Consequently, it remained unrecorded at the time of trial. Evidence was presented that the three parcels of land had no marketable value because no building permits could be issued and the parcels could not be sold until the plat is approved and filed.

Following trial the district court found that Child and Chester had fully performed their part of the Agreement, which was to surrender their then existing claims against Blaser. They had allowed the 1977 case to be dismissed for lack of prosecution, pursuant to I.R.C.P. 40(c). The court held that the parties entered into the Agreement under a mutual mistake, erroneously believing that Blaser was in the final stages of establishing the subdivision. The erroneous belief that the final plat soon would be approved and filed was said to be a material fact upon which the contract was based. The court further held that the failure of Blaser to complete and obtain final approval of the subdivision and provide title insurance was a material breach, destroying the entire purpose of the contract. The trial court determined that Child and Chester were entitled to damages—the remedy they sought—equivalent to the fair market value the lots would have had if the subdivision had been completed as promised. However, as a condition for such an award, Child and Chester were required to agree to reconvey the lots to Blaser. They did agree to this condition. Blaser was ordered to pay Child and Chester $41,354.98, representing $39,000 as the fair market value of the parcels in 1979, assuming the subdivision had been platted and recorded, and $2,354.98 for accrued taxes and water assessments which Child and Chester had paid in the interim.

Based upon his findings of "mutual mistake" the district judge fashioned an equitable remedy in part that could be characterized as a rescission with restitutionary relief. His announced purpose was to put the plaintiffs in as good a position as they would have been in but for the Agreement. This approach has generated many of the issues Blaser has raised on appeal. Basically, we agree with the relief fashioned by the trial judge. Contrary to many of the appellant's arguments we also agree that the judge had the authority—even the duty—to grant the relief to which Child and Chester were shown to be entitled although they had not demanded such relief in their pleadings. I.R.C.P. 54(c); *Barnard & Son, Inc., v. Akins,* 109 Idaho 466, 708 P.2d 871 (1985); *Cady v. Pitts,* 102 Idaho 86, 625 P.2d 1089 (1981). Blaser has also attacked the district judge's finding that there was a breach of contract. However, we believe that breach of contract— the theory relied on by plaintiffs—is a sufficient basis by itself to support the relief granted. Accordingly, we will bypass a discussion of mutual mistake. We will address the arguments made concerning breach of contract and discuss the remedy furnished for that breach.

## I

Blaser's argument, that the district court erred in finding there was a material breach of contract, has focused almost entirely on the failure to furnish title insurance. Blaser asserts there was no such failure and even if there was, the breach was minor and could be corrected easily by merely awarding Child and Chester the cost of the title insurance policy. We will return to this argument shortly.

Blaser's narrow argument fails to adequately address the broader finding of the district court. It was Blaser's failure "to complete and obtain final approval of the subdivision and provide title insurance" which the district court held destroyed the very purpose of the contract. This critical conclusion of the district court is properly based upon findings which are supported by substantial, though disputed, evidence in the record. Blaser expressly agreed to take all necessary steps to "complete the final approval of said plat and the establishment of said subdivision." The court determined that a reasonable time "for subdividing" did not expire until June, 1982. Thus, contrary to Blaser's assertions on appeal, the district court did implicitly find when the breach occurred. Blaser was given nearly three and one-half years to "diligently" perform the Agreement made in January, 1979. He has simply not shown that he should be excused from the obligations he expressly undertook in the Agreement.

Nor are we persuaded that Blaser's failure to furnish title insurance can be excused. The Agreement required Blaser to provide title insurance in the amount of $20,000 per tract "subject only to standard reservations of like policies." Blaser points to some evidence indicating that he refused only to pay for certain $30,000 policies of title insurance ordered by Chester. However, the district court was not persuaded—nor are we—that such evidence excused Blaser from furnishing the *required* amount of title insurance. The property was to be conveyed "free and clear from all encumbrances and in good marketable condition...." Well-supported findings of the court show in fact that the property when conveyed was encumbered with statutory liens for unpaid taxes and a water assessment. Substantial, although disputed, evidence showed that the parcels were unmarketable when conveyed to plaintiffs and that they remained unmarketable to time of trial, four years later, because of Blaser's failure to meet requirements for approval of the subdivision. Blaser notes that no time limit was specified within which the title insurance was to be furnished. Even if, as he argues, it was not to be furnished until after approval and filing of the subdivision plat, his failure to accomplish that task will not excuse his failure to furnish the insurance. Such a failure has been held to be a material breach of contract in similar circumstances.

*See, e.g. Barnard & Son, Inc. v. Akins,* 109 Idaho 466, 708 P.2d 871 (1985).

 The remedy Child and Chester sought for the breach was compensation for the loss in the value of three "lots" because of Blaser's failure to complete the subdivision. They put in proof of the value the three lots would have had if Blaser had diligently performed his promise to complete, and to obtain approval of, the subdivision. The district court determined that value to be $39,000 when the Agreement was made in January 1979 and that the lots would have increased in value to the time of trial in 1984. Based on other evidence presented, the court also determined the present value of the lots to be zero because they were unrentable, produced no income and were unmarketable so long as Blaser's subdivision lacked official approval.

There was substantial evidence in the record to establish that, had Blaser performed the contract as agreed, Child and Chester would have owned lots, worth $39,000 or more, in a subdivision completed no later than June 1982. Child and Chester contended that the loss in value of the lots, $39,000, ought to be treated as a permanent loss since Blaser might never complete the subdivision. Indeed, there was persuasive evidence in the record that Blaser no longer had any real incentive to accomplish the task since he had disposed of most of the lots in the subdivision and had thus far avoided the expense of paving the streets. The district court held, however, that the loss should not be treated as permanent because Blaser could at any time decide to complete the subdivision. In that event, the court reasoned, Child and Chester would be the recipients of a double recovery. They would have the lots in an approved subdivision—their bargain, however late it arrived—and they would have damages for the loss of their bargain. To avoid this possible inequitable result the court made it a condition that Child and Chester would reconvey the lots to Blaser.

The evidence is undisputed that between January, 1979 when the Agreement was made and December 1984 when the trial was held, Child and Chester paid $2,354.98 in taxes and water assessments on the three lots. The district court added this amount to the plaintiffs' damage award, subject to the same condition that the lots be returned to Blaser.

While no separate error has been assigned to the award of this $2,354.98 to Child and Chester we will discuss it briefly. The taxes and water assessments were paid by Child and Chester in reliance upon the promise of Blaser to complete the subdivision. Because of Blaser's breach, Child and Chester received no benefit from the lots or from these payments. The payments were necessary, however, to prevent the loss of the properties through tax delinquencies. By reason of the payments the properties were preserved and could be returned to Blaser, thus preventing a possible double recovery by Child and Chester. Blaser has become the ultimate beneficiary of these payments. To direct that the lots be returned to Blaser without requiring him to pay these assessments might avoid a double recovery on the one hand only to allow an unjust enrichment on the other. We hold that the district court struck the proper balance by requiring Blaser to repay these sums.

What the court did to avoid an "unjust enrichment" or double recovery by plaintiffs might be characterized as involving equitable rescission of the Agreement and restitution of benefits bestowed by both sides. However, we see no reason why the relief given cannot be viewed as simply tailoring the remedy to accomplish the general purpose of the court in any breach of contract action: to place the injured party in a position no better and no worse than he would have occupied had the contract been performed. *Christensen v. Christensen,* 100 Idaho 733, 605 P.2d 80 (1979). By making the award conditional a second purpose also was accomplished: to compensate the injured party for his loss without punishing the breaching party. *Anderson v. Gailey,* 100 Idaho 796, 606 P.2d 90 (1980). We believe that under the facts of this case

such relief was appropriate and within the authority of the trial court to grant.

## II

Blaser has raised several issues concerning errors alleged to have been committed by the trial court in rulings on evidentiary matters. We have examined the trial record and in each instance we conclude that no error occurred or that the error was harmless. We do not believe these alleged errors require discussion in this opinion.

## III

■ Finally, we reach the issue raised in Child's and Chester's cross-appeal. It is asserted that the trial court erred in refusing to award prejudgment interest to plaintiffs on all sums the court found due from Blaser. This claim is made under both (1) the principle of restitutionary interest expressed in § 28 of the RESTATEMENT (SECOND) OF RESTITUTION (tentative draft No. 1, 1983) (hereinafter referred to as the Second Restatement) and (2) the general principle of allowing prejudgment interest under I.C. § 28–22–104.

Section 28 of the Second Restatement provides:

A judgment or order for restitution will, at the claimant's instance, include an award of an amount as interest required to prevent unjust enrichment of the defendant. Such an award will be limited or denied to the extent that

(a) it would duplicate an award of use value or of other benefit to the defendant,

(b) it depends on circumstances in which he cannot justly be charged for failure to make restitution, or

(c) the court cannot determine with reasonable certainty the extent of his unjust enrichment.

The trial court denied the award of interest under the restitutionary theory. The court held that Blaser did not gain by the delay in subdividing and, in fact he suffered "greater loss by reason of the delay" than

did Child and Chester because Blaser still owned "numerous lots" in the subdivision. While we do not necessarily agree that the evidence would fully support these statements, we do agree that, from the evidence produced, the court could not "determine with reasonable certainty the extent of [any] unjust enrichment." Therefore, under the provisions of § 28(c) of the Second Restatement it was not error to deny an award of "restitutionary" interest.

■ We turn now to the other arguments of Child and Chester that the court erred in denying them prejudgment interest. Idaho Code § 28–22–104 provides for interest on certain money claims. It has been interpreted to allow prejudgment interest where the amount of liability is liquidated or capable of ascertainment by mathematical process. *See, e.g., Davis v. Professional Business Services*, 109 Idaho 810, 712 P.2d 511 (1985) and *Farm Dev. Corporation v. Hernandez*, 93 Idaho 918, 478 P.2d 298 (1970). Child and Chester cite *Guyman v. Anderson*, 75 Idaho 294, 271 P.2d 1020 (1954), for the proposition that interest will be awarded even though the claim is unliquidated if the amount can be ascertained by mere computation or by a legal or recognized standard. Our Supreme Court has repeatedly recognized a general rule under which courts have refused to allow interest from a time prior to judgment when the principal amount of liability was unliquidated. This limitation is apparently based on equitable considerations. *See e.g., Davis v. Professional Business Services, supra.*

"However, where the amount of liability is liquidated or capable of ascertainment by mere mathematical process * * this Court has allowed interest from a time prior to judgment, for in that event the interest in fully compensating the injured party predominates over other equitable considerations." *United States Fidelity & Guaranty Company v. Clover Creek Cattle Company*, 92 Idaho 889, 900, 452 P.2d 993, 1004 (1969); *Guyman v. Anderson*, 75 Idaho 294, 271 P.2d 1020 (1954). In order for interest to be computed from the date of the con-

tract, the amount upon which the interest is to be based must have been mathematically and definitely ascertainable.

*Farm Development Corporation v. Hernandez,* 93 Idaho 918, 920, 478 P.2d 298, 300 (1970). *See also Davis v. Professional Business Services, supra.*

Child and Chester first assert that $39,000 of the amount awarded was easily ascertainable from the market value of the three parcels in 1979. We disagree. The trial court determined the value of the parcels based on conflicting expert testimony and upon differing theories of recovery. Here, it cannot be said that the value of the lots was ascertainable by mere mathematical process or by a recognized standard.

■ Child and Chester argue alternatively that even if they are not entitled to interest on the entire amount of the award, they are at least entitled to prejudgment interest on the amounts they expended for taxes and water assessments ($2,354.98) against the lots while they were waiting for Blaser to complete the subdivision. With this contention we agree. The dates and amounts of those expenditures were not disputed. We believe that plaintiffs are entitled to interest on these liquidated sums from the dates when paid to February 25, 1985, the date of judgment, at the prevailing statutory rate(s) in existence during this interim. *See* I.C. § 28–22–104; *McGill v. Lester,* 108 Idaho 561, 700 P.2d 964 (Ct.App.1985).

As modified, the judgment is affirmed. Costs to Child and Chester. No attorney fees awarded on appeal.

BURNETT, J., and McFADDEN, J. Pro Tem., concur.