803 P.2d 989

**STOOR'S INC., an Idaho corporation, and Gerald Stoor and Arlene Stoor, individually, Plaintiffs–Respondents,**

v.

**The IDAHO DEPARTMENT OF PARKS AND RECREATION, Yvonne S. Ferrell, Director, and The Idaho Parks and Recreation Board, Defendants–Appellants.**

No. 17869.

Supreme Court of Idaho,
Boise, February 1990 Term.

Dec. 28, 1990.

---

---

Jim Jones, Atty. Gen., Steven W. Strack, Deputy Atty. Gen., Boise, for defendants-appellants. Steven W. Strack argued.

Hawley, Troxell, Ennis & Hawley, Boise, for plaintiffs-respondents. Joseph P. Langfield argued.

BISTLINE, Justice.

This appeal raises the question whether prejudgment interest was properly awarded to the plaintiffs-respondents, the Stoors. We hold that it was not, because the principal amount of liability had not been judicially reduced to a liquidated amount. Therefore, prejudgment interest was not ascertainable by simple mathematical computation, because no such interest would accrue until there was a sum certain against which interest could accrue.

The Department of Parks and Recreation had a lease agreement with Mr. Stoor. This agreement granted Mr. Stoor the right to construct and operate concessions at the Spring Shores Marina for a term of years. Mr. Stoor was also given the right to accept any new lease proposed by the Department before others would be given the chance to bid for the new lease. If Mr. Stoor did not accept the new lease, then he had the option of removing his concessions from the Marina, or selling the property (*i.e.*, the equipment, buildings, etc.) to the new lessee. If Mr. Stoor chose to sell his property, he was bound by this provision of the lease he signed with the Department:

> In the event that the Lessors, upon the termination of this lease, lease the premises to another and the Lessee herein does not choose to remove such equipment, buildings and other personal property from the recreational area, such property ... shall be appraised by three impartial appraisers, one selected by the Lessee, one by the successor Lessee, and the third by the other two appraisers, the successor Lessee shall be required to pay the Lessee herein the appraised price for the property as determined by the appraisal.

R. 33.

Mr. Stoor's lease expired February 28, 1985. The Department proposed a new lease, and Mr. Stoor opted not to renew his lease under the new conditions. The new lease was then offered in a public bid, and an agreement was executed between the Department and the successful bidder, Mr. Goff. This agreement required Mr. Goff to purchase Mr. Stoor's property at the Marina as a condition precedent to the execution of a lease agreement. Mr. Goff had an appraisal performed, and offered to purchase Mr. Stoor's property for $260,000. Mr. Stoor refused this offer and refused to cooperate in the appraisal process, because he insisted that the property contained intangible values for which he should be compensated.

The parties went to court over this impasse. The trial court determined that an appraisal of the property should include good will and other intangible values, and that the Department was required to execute a lease agreement with Mr. Goff be-

fore Mr. Stoor would be required to participate in the appraisal process. The Department executed a lease with Mr. Goff on January 15, 1987, and then entered into appraisal negotiations with Mr. Stoor. Mr. Stoor's attorneys drafted a proposed agreement regarding the appraisal process. However, Mr. Goff believed the agreement would not result in a fair appraisal, so the Department and Mr. Goff declined to sign the agreement. Mr. Stoor filed suit, alleging that the Department was in violation of the terms of the Department/Stoors lease agreement. In addition, the interim lease between Mr. Stoor and the Department had expired, and the Department and Mr. Stoor could not agree on the terms of another interim lease. The Department therefore filed an unlawful detainer action against Stoors, seeking possession of the Marina. The court found that the Department was entitled to possession, even though Mr. Stoor had not been paid for his property located at the Marina.

The parties stipulated to the appointment of a special master to determine the value of Mr. Stoor's property at the Marina. The property's value was to be established as of December 31, 1986, which was approximately the date that a lease extension granted by the Department to Mr. Stoor had expired. The special master was presented with appraisals from Mr. Stoor and Mr. Goff. Mr. Stoor's appraisal valued the property at $510,000, using three methods: (1) discounted forecasted cash flows, (2) capitalization of pretax income, and (3) application of a composite price-earnings ratio to the Marina's net income for 1986. This appraisal included a value of $178,000 for intangible assets. The appraiser hired by Mr. Goff established a value of $207,000 by comparing the Marina to other recreational properties. Mr. Goff's appraiser found that there were no intangibles such as goodwill attached to the property.

After consideration of the conflicting appraisals, the special master found that the value of Mr. Stoor's property was $324,000. The special master adopted a cost of replacement minus depreciation approach. The special master then examined the value of the property using a capitalization of income approach to determine whether the property contained intangible assets. The capitalization method resulted in a value of $319,000; $5,000 lower than the value of the property. Therefore, the special master held that the property contained no intangible assets.

Mr. Stoor demanded the payment of $324,000 from Mr. Goff after the special master issued his report. Mr. Goff needed time to arrange financing, and instead of waiting Mr. Stoor returned to court, seeking a court order for payment of the $324,000. To avoid further litigation, the Department tendered a check in that amount to Mr. Stoor on July 19, 1988, which was accepted, leaving to be adjudicated Mr. Stoor's claims for appraisal fees, prejudgment interest, consequential damages, and attorneys' fees.

Both parties moved for summary judgment. The trial court held that the Department had breached its obligation to negotiate in the appraisal process. The court relied upon *Bergkamp v. Carrico*, 108 Idaho 476, 700 P.2d 98 (Ct.App.1985), to award Mr. Stoor prejudgment interest from March 27, 1987 (the date that negotiations over the appraisal process failed) to July 19, 1988 (the date the Department tendered a check for $324,000 to Mr. Stoor). The court subtracted from this time the three months and three days during which the special master's proceedings were conducted, in addition to a sixty day period representing a commercially reasonable time in which to pay Mr. Stoor.

The issue on appeal is whether the district court erred in awarding prejudgment interest or, alternatively, damages measured by the interest rate. This issue is framed by the district court's statement that:

> I conclude, as a matter of law, that the reasoning of the *Bergkamp* [*v. Carrico*, 108 Idaho 476, 700 P.2d 98 (Ct.App. 1985)] case applies, and that the Plaintiffs are entitled to prejudgment interest following a deduction of the months during which the Department is excused from its breach. If the Plaintiffs were

not entitled to prejudgment interest, as I calculated, they would be entitled to any damages that flowed from that breach. I think that the allowance of interest is a most reasonable and equitable method of dealing with awarding damages in this case.

This Court has repeatedly refused to allow interest from a time prior to judgment when the principal amount of liability was unliquidated. *McGill v. Lester*, 108 Idaho 561, 700 P.2d 964 (Ct.App.1985) (prejudgment interest on secured debt was "ascertainable by mathematical computation"); *Child v. Blaser*, 111 Idaho 702, 727 P.2d 893 (Ct.App.1986) (prejudgment interest was awarded on amounts expended for taxes and water assessments because "[t]he dates and amounts of those expenditures were not disputed"); *Davis v. Professional Business Servs.*, 109 Idaho 810, 712 P.2d 511 (1985) (checks paid to reconstruct plaintiff's account could be added up and were therefore "definitely ascertainable" for purposes of awarding prejudgment interest); *Farm Dev. Corp. v. Hernandez*, 93 Idaho 918, 478 P.2d 298 (1970). As stated in *Farm Development Corp. v. Hernandez:*

> [I]t is ... settled that 'courts have refused to allow interest from a time prior to judgment when the principal amount of liability was unliquidated. This limitation is apparently based upon equitable considerations. However, where the amount of liability is liquidated or capable of ascertainment by mere mathematical processes ... this Court has allowed interest from a time prior to judgment, for in that event the interest in fully compensating the injured party predominates over other equitable considerations.'

93 Idaho at 920, 478 P.2d at 300 (citations omitted) (cited with approval in *Davis; see* 109 Idaho at 817, 712 P.2d at 518).

Our Court of Appeals articulated a narrow exception to this rule in *Bergkamp*. There, the plaintiffs were lessees under a commercial lease who had been wrongfully evicted by their landlord. Their leasehold interest in the commercial property was determined by an appraiser, and was not readily ascertainable by simple computation. The *Bergkamp* court observed:

> The larger question is whether the value of the leasehold also should bear prejudgment interest. The landlords have argued that it should not. They rely upon decisions awarding prejudgment interest only upon damages that are liquidated or ascertainable merely by mathematical computation. *See, e.g., Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971); *Farm Development Corp. v. Hernandez*, 93 Idaho 918, 478 P.2d 298 (1970). However, this limitation of prejudgment interest is not absolute. '[The] limitation is apparently based upon equitable considerations.' *United States Fidelity and Guaranty Co. v. Clover Creek Cattle Co.*, 92 Idaho 889, 900, 452 P.2d 993, 1004 (1969).
>
> . . . .
>
> Accordingly, we hold that where a tenant has been dispossessed through wrongful termination of a lease, and where the damage award includes a projected income stream discounted to present value on the date of termination, the tenant is entitled to prejudgment interest on the value of the leasehold from that date.

*Bergkamp*, 108 Idaho at 481, 700 P.2d at 104.

Here, as in *Bergkamp*, we are dealing with a landlord/tenant situation. Beyond this point of identity, however, there are no similarities between *Bergkamp* and the present case. In this case, the award was not an income stream discounted to present value. There was no wrongful dispossession or other conduct on behalf of the Department which closely resembled a conversion. There was no appropriation of the Stoors' personal property, much less a wrongful one. In fact, after expiration of the term of the original lease, the Stoors were given an extension under which they continued in possession of their personal property. In contrast to the wrongful termination in *Bergkamp*, the Stoors held over so that the Department was eventually forced to bring an unlawful detainer action against them to obtain access to the real property. Moreover, even after the

Department obtained possession of the real property, the Stoors retained the right to remove their property. Hence, *Bergkamp* does not support an award of prejudgment interest in this case.

The decision of the district court to award prejudgment interest is reversed; this cause is remanded with directions for the district court to recalculate the award to Stoors without prejudgment interest. Costs to the Department; no fees on appeal.

BAKES, C.J., and JOHNSON, BOYLE and McDEVITT, JJ., concur.